COMMISSIONERS OF BURKE COUNTY v. CATAWBA LUMBER COMPANY.

*Injunction—Floating Logs—Damage to County Bridges—Bond to Cover Damages.*

In an action by a county to enjoin defendant from floating logs in certain streams and to recover damages for injury done to county bridges over such streams, on a motion by plaintiffs to continue a temporary injunction, it appeared that there was a serious issue as

to whether or not the streams were "floatable"; that defendant had a large number of logs that would become worthless if not floated, and that an injunction would stop its mill, to the great detriment of many people, and so as to damage defendant $100 per day: *Held*, that it was proper to permit defendant to give bond sufficient to cover all damages that would probably be sustained by plaintiffs and refuse to continue the injunction.

MOTION to continue a restraining order to the hearing, heard before *McIver, J.*, at Chambers in Hendersonville, June 8, 1893.

The complaint alleges that the defendant destroyed certain bridges belonging to the plaintiffs across the Catawba river and Johns river, in Burke county, by floating logs in said rivers, and that the defendant threatens to continue to float logs therein, and in Upper creek, also in Burke county, and that the result of such threatened floating will be to destroy other bridges upon said rivers and creek belonging to plaintiffs. Judgment is asked for damages for the bridges destroyed and that the defendant be enjoined from continuing to float logs on said streams.

The defendant denies most of the material allegations of the complaint, but admits that it has, before the commencement of the action, been floating logs in the said rivers, and that it is its intention to continue to float logs therein as well as in Upper creek. It alleges further, in defence, that said streams are capable of being used for floating rafts, boats and logs, and are, in this sense, navigable streams and subject to the public use as public highways and easements, and as such have been for a long time, to-wit, more than twenty-three years prior to the commencement of this action, so used by the public and all persons desiring to float logs, rafts and boats thereon. An order temporarily restraining the defendant having been granted, the plaintiffs moved to continue it to the hearing, but his Honor dissolved the same upon defendant giving

bond to secure damages to plaintiffs in the sum of $1,500, from which order the plaintiffs appealed.

*Mr. J. T. Perkins,* for plaintiffs (appellants).
*Messrs. Charles A. Moore* and *J. B. Batchelor,* for defendant.

SHEPHERD, C. J.: Many affidavits filed by the defendant seem to sustain its contention that the stream in question is what is known as a floatable stream. These, however, are squarely denied by the affidavits introduced by the plaintiffs, and hence a very serious question of fact arises which must be determined by a jury. Pending this litigation the plaintiffs asked for an order restraining the defendant from floating any logs whatever in the said stream, but his Honor, in view of all of the circumstances, refused to grant such order, but required the defendant to enter into a bond in the sum of $1,500 conditioned upon the payment to the plaintiffs of "such sum or sums as the said Board may recover of the defendant for injury that may hereafter be done to the said bridges specified in the complaint caused by the defendant, its agents or servants, in the prosecution of its business of floating logs in the stream specified in the complaint, and until the final determination of this cause." From this order the plaintiffs appeal, and it is contended that this is a case belonging to that class "where injunction is itself the relief sought and not merely ancillary, and to dissolve the injunction is to deny the relief sought and in effect to dismiss the action." While it may be true that an injunction is the relief asked for in this case it does not necessarily follow that a refusal to grant one pending the action will defeat its main purpose, as it would have done in *Marshall* v. *Commissioners,* 89 N. C., 103, and similar cases. It is not denied that the bond

required by the Court is sufficient in amount to cover all damages that may probably be sustained, and it appears from the affidavits of the defendant that it has a large number of logs on the banks of the stream that will become worm-eaten and worthless if it is not permitted to float them, and that an injunction "will entirely stop the operation of said company's mill, to the great detriment of innumerable citizens of Burke county, who thereby lose the only market for their timber, and to the great and lasting loss and damage of the said company of one hundred dollars *per diem.*" It is hardly to be presumed that in view of its liability upon the bond the defendant will not use proper care in floating logs during the pendency of the action, and we are of the opinion that the order of the Court is sustained by the principle upon which this Court acted in *Roper* v. *Lumber Co.*, 93 N. C., 22, in which an injunction was declined and in lieu thereof a bond was required of the defendant. The Court in that case said: "It is against the policy of the law to restrain industries and such enterprises as tend to develop the country and its resources. It ought not to be done unless in extreme cases, and this is not such a one." These considerations render it unnecessary at this time to pass upon the other interesting questions discussed by counsel. We think the present order should stand, but that the plaintiffs should have leave to renew their motion for an injunction should it be made to appear hereafter that the conduct of the defendant is so negligent and the probable damage and inconvenience to the public so great that the bond will prove inadequate to its protection. Affirmed.