**BEAVER LUMBER CO. v. ECCLES.**

[73 Pac. 201.]

INJUNCTION AGAINST WASTE BY MORTGAGOR IN POSSESSION.

1. A mortgagee of land may maintain a suit to restrain waste by the mortgagor that will impair the value of the property as security for the debt. For example, in this instance defendant mortgaged 1,800 acres of timber land, and the timber on 400 acres more, the principal value of the security being the growing trees. The defendant installed a valuable logging and sawing plant to manufacture the standing timber into lumber, and was operating it when this suit for an injunction was filed. *Held*, that the trial court properly restrained further operations by defendant, though it would take ten years to remove all the timber, and the mortgage was entirely due in two years, for the removal of a fifth of the property pledged would be a material reduction of the security not contemplated by the contract.

IMPAIRMENT OF MORTGAGE SECURITY — FACTS IN EVIDENCE.

2. Timber land valued at $47,500 is not disproportionate security for a mortgage of $30,000 subordinate to a previous lien of $5,000, in view of the known fluctuations in timber and lumber.

WASTE BY MORTGAGOR — BOND OF INDEMNITY.

3. In a case where a mortgagor should be enjoined from continuing waste on the mortgaged property, defendant ought not to be permitted to continue his destruction upon filing a satisfactory bond, either for the payment of the debt when due, or to indemnify plaintiff for such damages as he may suffer by the diminution of the security.

From Columbia: THOS. A. McBRIDE, Judge.

This is an appeal by William Eccles and others from a decree of the circuit court enjoining them, at the instance of the Beaver Flume & Lumber Co., from cutting and removing certain timber, until a mortgage to secure the payment of $30,000, one half payable in one year and the remainder in two years from the date thereof, given by defendant Eccles to plaintiff April 8, 1902, is fully paid. The mortgage covers 1,800 acres of timbered land, and also the timber upon about 400 acres additional, together with certain fluming privileges and rights of way, and is subject to a mortgage to the board of school land commissioners to secure a loan of $5,000. The chief or principal value of the land thus incumbered consists in the standing timber thereon, denuded of which the land itself would be practically worthless. Subsequent to the execution of the mortgage, the defendant Eccles placed valuable improvements upon the land, at a large expense to himself, for the purpose of cutting and manufacturing the timber into lumber, shingles, and piling, and was actively engaged in the business when this suit was begun and a temporary injunction granted. The value of the timber is variously estimated, ranging from $25,000 to $100,000. The defendants make no denial of their purpose to continue cutting and removing the timber, but say that it would take ten years to remove the whole thereof, and that not more than one tenth of it will be taken by them prior to the maturity of the debt, and that plaintiff's security will not be materially impaired thereby; and, further, the defendant Eccles proffers to give to the plaintiff such a bond as the court may require and approve, conditioned that he will pay all such indebtedness at maturity, or that he will pay to plaintiff any damages that it may suffer by reason of removing any such timber, and thereby reducing the value of its security.                    Affirmed.

*43 Or.—26.*

For appellants there was a brief over the name of *Coovert & Stapleton*, with an oral argument by *Mr. Geo. W. Stapleton.*

For respondent there was a brief over the name of *Fulton Bros.*, with an oral argument by *Mr. G. C. Fulton.*

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion.

The questions involved are (1) whether plaintiff has shown a right to the relief sought, and, if so, (2) whether the defendants are entitled to stay the injunction by executing the proffered bond.

1. Ordinarily, a mortgagee has the right to restrain the commission of waste, where it tends to the impairment of his security. An action at law for trespass, if one lies, is not a certain nor always an adequate remedy in such cases, and it is therefore, as a general rule, unnecessary to allege insolvency of the mortgagor, or that the injury threatened is literally irreparable : 1 Jones, Mort. (2 ed.) § 684; 1 High, Injunc. (2 ed.) § 693 ; *Vanderslice* v. *Knapp*, 20 Kan. 647. Such acts as will render the security insufficient for the satisfaction of the debt, or of doubtful sufficiency, constitute, according to the consensus of authority, an impairment of the security, through the commission of waste. Such is the conclusion reached by Mr. Justice DICKINSON in *Moriarty* v. *Ashworth*, 43 Minn. 1 (44 N. W. 531, 19 Am. St. Rep. 203), citing many text-writers and adjudicated cases. Among them, see references above, and *King* v. *Smith*, 2 Hare, 239, 244 ; *Coker* v. *Whitlock*, 54 Ala. 180; *Buckout* v. *Swift*, 27 Cal. 433 (87 Am. Dec. 90); *Harris* v. *Bannon*, 78 Ky. 568. See, also, *State* v. *Northern Cent. Ry. Co.* 18 Md. 193. But, in the application of the rule, he says: "We think that the mortgagee is entitled to be protected from acts of waste which would so far impair the value of the property as to render the security of doubtful

sufficiency. He is entitled to have the mortgaged property preserved as sufficient security for the payment of his debt, and it is not enough that its value may be barely equal to the debt. That would not ordinarily be deemed sufficient as security to one whose purpose is to secure payment, and not to become a purchaser of the property at its market value. And not only must it be considered that the mortgage is held to secure payment of the debt, and not for the purpose of converting the mortgagee into a purchaser, but that, if the debt is not yet mature, it is to be considered whether, during the time which may elapse before maturity, the present value of the property may not become depreciated from causes not now known." The rule is applicable where realty is mortgaged in the usual way, and constitutes the embodiment of the security. The mortgagor may do many things as the owner of such an estate, and use it in the ordinary way, without in any wise affecting the mortgage contract, and, unless the waste goes to the impairment of the estate itself to such an extent as to render the security of doubtful sufficiency, regarded in the light of business principles, there can be no restraint. The present, however, is not the usual case. The growing timber, and not the realty as such, except as the timber may be regarded as realty, is the very substance of the security, and was so considered from the inception of the contractual relations. Its severance and removal, therefore, is as much a taking of the substance as if lumber had been mortgaged and it was sought to dispose of a portion of it contrary to the conditions of the hypothecation. While the cutting of firewood and the severance of other parts of realty, in its usual acceptation, as are incident to the use, occupation, and improvement of land, in the ordinary manner and for the purposes for which it is ordinarily used, are not accounted an invasion of the mortgagee's right or estate (2 Tiffany, Mod. Law Real Prop. § 524),

yet it seems almost self-evident that a direct withdrawal or dislodgment of one tenth of the very property hypothecated would amount to a material and vital deterioration of the security contracted for, and, not only this, but would be a direct impairment of the contract itself, and it would be inequitable and unjust to permit it.

2. The question as to whether it would render the security of doubtful sufficiency is hardly in the case. But, if it were, the facts are such as would warrant the injunction at any rate. Eccles bought the property for $47,500, paid $12,500 down, and it is incumbered for the balance, the plaintiff's mortgage being subordinate to one to the board of school land commissioners for $5,000; so that, in business estimation, the value of the security may not be considered disproportionate to the amount of the mortgage. True, the mortgagor has placed large improvements thereon, and it is probable that timber has advanced in value. But without the timber the improvements would be of little value; besides, the price of timber is fluctuating in the market, and it cannot be said with certainty that its value will even be as great when the debt becomes due as it was when the mortgage was executed; hence the contention of appellants is without merit, and the injunction was therefore, in our opinion, properly granted.

3. Should the defendant Eccles be allowed to execute a bond for the payment of the debt, or for such damages as the plaintiff may suffer by reason of the removal of the timber, and thereby avoid the injunction process? If permitted to do so, it would, it must be conceded, amount to the virtual substitution of one security for another, and that, not only without the consent, but against the protest, of the mortgagee. The conditions must certainly be unusual that would warrant a court of equity in adopting such a procedure. A case is cited where the security consisted of pine woodland which had been burned over,

and it became necessary to cut the wood off in order to preserve it and to permit a new growth to take its place, and the court allowed the cutting to proceed upon the defendant's furnishing security equal to the value of the wood, to be fixed by a referee : *Brick* v. *Getsinger*, 5 N. J. Eq. 391.   Other cases are cited where, pending a dispute as to the title or right to the possession of realty, courts have permitted security to be given to cover any damages sustained by the removal of the timber in the meanwhile, where extensive preparations had been made for the purpose, and a present delay would result in great loss to the investors: *Wood* v. *Braxton* (C. C.) 54 Fed. 1005; *Roper Lum. Co.* v. *Wallace,* 93 N. C. 22; *Commissioners of Burke County* v. *Catawba Lum. Co.* 114 N. C. 505 (19 S. E. 636). The applicability of these cases is not apparent here. Whatever outlay the defendant Eccles made was for the purpose of invading the very substance of the estate or property which he expressly pledged as security for the payment of his debt.   Now, the mere fact that the expenditure was incurred, and men employed to remove the timber and manufacture it into lumber and other commodities to be disposed of in the market, can afford no sufficient reason why a court of equity should interpose to change the basis of the security in order to permit the further prosecution of the enterprise.   The enterprise was inaugurated in subordination to the contractual rights of the plaintiff, and, unless some peculiar change in the conditions over which the parties had no control should require special interference to protect them, or either of them, from loss or damage, there can be no interposition to relieve against a contract legally made and fairly entered into. The decree of the circuit court should be affirmed, and such will be the order of this court.            AFFIRMED.