650 P.2d 449

**WESTERN COACH CORPORATION, an Arizona corporation, Plaintiff-Appellee,**

v.

**Marvin E. ROSCOE and Carole Roscoe, husband and wife; J. E. Roscoe and Florence Roscoe, husband and wife, Defendants-Appellants.**

No. 15826.

Supreme Court of Arizona, En Banc.

July 28, 1982.

**150**

Tanner, Jarvis & Owens by Stephen C. Birringer, Phoenix, for plaintiff-appellee.

Van O'Steen & Partners by William R. Mettler, Jr., Phoenix, for defendants-appellants.

FELDMAN, Justice.

The action arises out of a complaint filed by plaintiff-appellee, Western Coach Corporation (Western), against defendants-appellants, Marvin and Carole Roscoe (Roscoe, Jr.), and J. E. and Florence Roscoe (Roscoe, Sr.). Western sought recovery of sums allegedly paid by it as a result of the Roscoes' failure to perform their obligations under a contract for the purchase of a mobile home.

The case was tried before a jury, but at the end of defendants' case, the trial court directed a verdict in favor of the Roscoes. Western moved for a new trial, the motion was granted, and the Roscoes appeal from that order. We have jurisdiction pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

The transaction which gave rise to this case commenced with Roscoe, Jr.'s purchase of a mobile home from Western Coach by a retail installment contract dated July 8, 1971. The purchase price was $21,736. As part of the transaction, Roscoe, Sr. agreed to guarantee the buyer's performance. On the same day, Western assigned all the seller's rights under the contract. By various intermediate assignments, those rights were ultimately assigned to Delta Investment Company (Delta). As part of the transfer of the seller's rights, and unknown to the Roscoes, Western guaranteed Roscoe, Jr.'s performance to the assignee of the seller's interest.

Roscoe, Jr. eventually sold the mobile home to a party named Love, and Love then sold it to Chambers. On each occasion, as required by the contract, the holder of the seller's interest in the contract consented to the transfer of the buyer's interest, each new transferee of the buyer's interest assumed the obligation to perform, and each transferror agreed to remain liable as a "primary obligor." In 1977, Chambers defaulted on the payments, and Western repossessed the vehicle at Chambers' request. According to Western, when it repossessed the mobile home from Chambers it discovered that the vehicle had been vandalized, stripped of its furnishings and otherwise damaged. After taking possession, Western towed the mobile home to its sales lot, where it was repaired and refurbished. In addition, Western made the delinquent payments on the mobile home and paid back taxes which had accumulated on the home. After proper notice, Delta sold the vehicle at a public sale and the proceeds were applied to the balance owing on the purchase contract. Western then instituted this action against the Roscoes to recover the sums it claims to have expended on their behalf.[1]

The sums Western claims to have advanced for the Roscoes' benefit fall within the following categories:

1. Installment payments made by Western on behalf of Roscoe, Jr. to the holder of the seller's interest in the contract in which Roscoe, Jr. was the original buyer and Roscoe, Sr. was a guarantor.

2. Back taxes paid on the mobile home.

3. Cost of towing, moving and storing the mobile home after Chambers notified Western to retake possession.

4. Cost of refurbishing the mobile home and repairing the damage to it.

---

1. Western also named Chambers and Love as defendants and obtained judgment by default against them. Presumably, these judgments are unsatisfied.

5. Attorney's fees and court costs of the action against Roscoe.

The trial judge originally granted the motion for a directed verdict because he believed that Western had failed to present sufficient evidence to support either a claim for indemnification or one for unjust enrichment. Subsequently, as a result of further legal argument, the trial judge determined that he had erred by granting the Roscoes' motion. On appeal, the Roscoes contend that the original order granting the motion for a directed verdict was correct, so that the trial court erred when it subsequently set aside that order and granted Western's motion for a new trial. We disagree.

■ After reviewing the record, we find that the trial court's final determination was correct. The Roscoes were entitled to a directed verdict only if Western had failed to introduce sufficient evidence to sustain a verdict upon the theory of indemnification or upon that of unjust enrichment. Viewing the evidence, as we must, in a light most favorable to the plaintiff, *Eaton Fruit Co. v. California Spray-Chemical Corp.,* 103 Ariz. 461, 463, 445 P.2d 437, 439 (1968), we find that the evidence adduced at trial was sufficient to sustain a verdict on Western's behalf.

### I. DEFAULTED PAYMENTS—REIMBURSEMENT AND CONTRIBUTION

#### A. *Roscoe, Jr.*

■ The Roscoe, Jrs. were the principal obligors for performance of the buyers' obligations of the contract. Western was a guarantor of their performance. Western's suit against the Roscoe, Jrs. for reimbursement of payments made under the retail installment contract was based on the theo-

ry that a guarantor who has paid his principal's debt is entitled to reimbursement from the principal. This is a correct statement of the law. *See Dykes v. Clem Lumber Co.,* 58 Ariz. 176, 180, 118 P.2d 454, 455 (1941); *Western Coach Corp. v. Rexrode,* 130 Ariz. 93, 96, 634 P.2d 20, 23 (App.1981). *See generally* 38 Am.Jur.2d *Guaranty* § 127 (1968).

■ The trial judge apparently believed that in order to recover under this theory Western had to prove that the Roscoe, Jrs. had agreed that Western would act as guarantor. This element, however, is not necessary in order to establish a right to subrogation. The principal is liable to the guarantor even though the contract of guaranty was executed at the request of the creditor and without the knowledge of the debtor. *See Western Coach Corp. v. Rexrode,* 130 Ariz. at 97, 634 P.2d at 24; 38 Am.Jur.2d *Guaranty* § 127 at 1136–37 (1968). Therefore, when Western introduced evidence at trial to prove that it was a guarantor and had paid its principals' obligation, it was entitled to have its reimbursement claim submitted to the jury for decision. Accordingly, it was error for the trial judge to direct a verdict in appellants' favor on this issue. The subsequent grant of a new trial was legally correct.

#### B. *Roscoe, Sr.*

■ Western's suit against the Roscoe, Srs. was based upon the theory that as co-guarantors [2] under the retail installment contract, the Roscoe, Srs. were liable to contribute a pro rata share of the amount that Western was required to pay under the installment contract. This is a correct theory of law.

Where two or more persons [e.g., Western and Roscoe, Srs.] have bound themselves as coguarantors, each of them, as be-

---

**2.** We assume in this section of the opinion that Western's claim against Roscoe, Sr. is grounded on the theory that Western and Roscoe, Sr. were in the position of cosuretyship. *See* Restatement of Security § 144 (1941). In that event, Western's claim against Roscoe, Sr. would sound in contribution for recovery of a pro rata share. *Id.* § 149. If, however, their relationship were one of subsuretyship, *id.* § 145, Western's claim against Roscoe, Sr. would sound in reimbursement and Roscoe, Sr. would be liable to Western for the entire performance. *Id.* That issue cannot be decided on the record as it presently stands and will have to be considered at retrial of the matter.

tween themselves, is required to bear a ratable proportion of the amount for which they are liable under the contract of guaranty. In the event one has paid more than his share of the sum, he is entitled to demand contribution from the other or others and may maintain suit to enforce the right.

38 Am.Jur.2d *Guaranty* § 128 at 1137 (1968) (footnotes omitted). *See also* Restatement of Security § 149 (1941). To establish its right to contribution under this theory, Western produced evidence to show its status as guarantor, Roscoe, Srs.' status as guarantors, and that Western had made payments under the installment contract in an amount greater than its pro rata share. Thus, there was sufficient evidence in the record to establish a prima facie right to contribution from Roscoe, Sr. to Western. Again, therefore, the trial judge erred when he originally directed a verdict in favor of Roscoe, Sr., and the subsequent grant of a new trial was correct.

*C. Roscoe, Jr. and Sr.—novation issue.*

Appellants contend that the evidence presented at trial establishes that a novation occurred when the mobile home was sold to the Loves, thus releasing both the Roscoe, Jrs. and their guarantors from liability under the installment contract. Therefore, appellants argue, when Western made the default payments to the bank it acted gratuitously and is not entitled to reimbursement.

We recognize that if a novation had in fact occurred, both the Roscoe, Jrs. and their guarantors would have been released from liability under the retail installment contract: "Novation may be defined as 'the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one which is thereby extinguished.'" *Steele v. Vanderslice,* 90 Ariz. 277, 284, 367 P.2d 636, 640 (1961). However, to constitute a valid novation, there must be an extinguishment of a previously valid obligation and an agreement of all parties to a new, valid contract. *Dunbar v.*

*Steiert,* 31 Ariz. 403, 404, 253 P. 1113, 1114 (1927); *United Security Corp. v. Anderson Aviation Sales Co.,* 23 Ariz.App. 273, 275, 532 P.2d 545, 547 (1975). The novation agreement may be express or implied. *Dunbar v. Steiert,* 31 Ariz. at 405, 253 P. at 1114. In this case, there was clearly a factual question whether the Roscoe, Jrs. had been released from their obligations under the retail installment contract when they sold the mobile home to the Loves. Mrs. Roscoe, Jr. testified at trial that it was her understanding that their obligation was extinguished when the Loves agreed to assume the payments under the contract. On the other hand, Max Morgan, President of Western, testified that he had explained to the Roscoes that even though they sold the mobile home to the Loves, they remained liable. In addition, Western introduced into evidence the consignment agreement whereby the Roscoe, Jrs. gave Western the power to sell the mobile home on their behalf, and the assumption agreement pursuant to which the Roscoes sold the mobile home to the Loves. Both of these documents contain clauses which state that nothing in the agreement alters the original purchasers' liability under the original installment contract. Since there was a factual question whether a novation had occurred, the Roscoes were not entitled to a directed verdict on that basis.

*D. Roscoe Jr. and Sr.—implied suretyship issues.*

In the alternative, the Roscoes seem to contend that, as a result of the sale from Roscoe, Jr. to Love, the Loves became the principal obligors on the debt by implication of law, so that, as between the parties to that sale, the Loves were principal obligors and Roscoe, Jrs. were sureties. *See* A. Stearns & J. Elder, *The Law of Suretyship* § 2.3, at 10 (5th ed. 1951); Restatement of Security § 83(c) (1941). Arguably, then, when the holder of the seller's interest learned of the transaction and of Roscoe, Jrs.' implied suretyship relation with Love, it was legally required to refrain from doing anything which would adversely affect

Roscoe, Jr.'s rights as surety by either impairing security for payment of the debt or the ability of the principal obligor to pay that debt.[3] *See Westinghouse Credit Corp. v. Wolfer,* 10 Cal.App.3d 63, 88 Cal.Rptr. 654, 657 (1970); Restatement of Security, *supra,* § 83, comment c. The Roscoes urge that when the holder of the seller's interest consented, without the Roscoes' knowledge, to the transfer of ownership from Love to Chambers, it committed an act which adversely affected the surety and thus released the Roscoes from their suretyship obligations.

Even assuming that despite the contractual provision that they remained liable as "primary obligors," the Roscoes were converted to sureties by reason of the sale to Love and Love's assumption of the payments, and even assuming further that the holder of the seller's interest was required by force of law to recognize this status,[4] we disagree with the Roscoes' position.

By consenting to the sale from Love to Chambers, the holder of the seller's security interest did nothing that would release Roscoe, Jr. from a suretyship obligation. The obligee's consent to the principal's transfer of property which is security for the debt does not ordinarily release the surety, unless the effect of the transaction is to alter the obligation, as, for example, by releasing the original obligor. *See Hartford Accident & Indemnity Co. v. Federal Bond & Mortgage Co.,* 59 F.2d 950, 954 (8th Cir. 1932); *Guide Realty Co. v. Lucas,* 151

Misc. 775, 272 N.Y.S. 416, 417–18 (1934). Here, Western maintained that despite the transfer of the right of ownership in the trailer, the Loves remained primarily liable on the debt. This was established by the admission in evidence of the assumption agreement between Love and Chambers; it provided that the "ORIGINAL PURCHASER [Roscoe, Jr.] or SUBSEQUENT TRANSFEREE [Love] agrees" that he/she would not be relieved from any of his/her responsibilities under the agreement. Thus, there was evidence which permitted the finder of fact to conclude that the Roscoes' rights against Love were unaffected by Love's sale to Chambers, with the result that the Roscoes were not released from their obligations whether they were principal debtors or sureties for Love's assumed performance.[5] *Cf.* Restatement of Security § 122 (1941). The Roscoes were not, therefore, entitled to a directed verdict on this issue.

## II. UNJUST ENRICHMENT

Western contends that under the theory of unjust enrichment, it is entitled to be reimbursed by the Roscoes for the sums it paid for back taxes, costs of moving and storing the trailer, and costs of repairing and refurbishing it. This claim is based on the argument that by expending such sums Western preserved the security for the debt and restored its value. Thus, when the holder of the security interest exercised its

---

**3.** Of course, the same argument would apply to Roscoe, Sr., who was a surety from the beginning by virtue of express contractual agreement.

**4.** *Compare Seale v. Berryman,* 46 Ariz. 233, 237–38, 49 P.2d 997, 999 (1935), *with Shiflet v. Marley,* 58 Ariz. 231, 237–38, 118 P.2d 1107, 1110 (1941).

**5.** The Roscoes have not argued, and we do not decide, whether the mere addition of an additional party who is liable for payment of the debt is such an alteration of the contract as will discharge the surety. There is some uncertainty in the law in this regard, and we have found no Arizona case on point. However, the Restatement of Security indicates that a modification which is of a type "that can only be beneficial to the surety" does not work a release.

*See* Restatement of Security, *supra,* § 128(a) and comment to that clause. In this case, it does not appear that the addition of Chambers as a primary obligor could be anything but beneficial to the Roscoes, who remained surety for Love's performance. Love was not released, nor was his obligation to pay altered. In any event, there would not seem to be a material alteration under the rule set forth in Restatement of Contracts § 435, comment (b) (1932), to which we are referred by the Restatement of Security, *supra,* § 127 and comment thereto. Legally, therefore, the Roscoes were not damaged by Chambers' assumption of liability. Roscoe has not urged, and we have not considered, whether consent to Chambers' taking of possession was a cause of impairment to the security.

right of sale pursuant to A.R.S. §§ 44–3149 and –3150, the security brought substantially more at the sale than would have been the case had Western not expended the funds. As a result, Western argues, the debt for which the Roscoes remained liable was reduced by the application of the sales funds and it is entitled to reimbursement for the sums it spent.

 It is well established that a person who has been unjustly enriched at the expense of another is required to make restitution to the other. *See, e.g., Harmon v. Harmon,* 126 Ariz. 242, 245, 613 P.2d 1298, 1301 (App.1980); Restatement of Restitution § 1 (1937); D. Dobbs, Handbook on the Law of Remedies §§ 4.1–.2 (1973). The principle is applicable, however, only if the person conferring the benefit is not an "officious intermeddler." *See* Restatement of Restitution, supra, § 2:

> Officiousness means interference in the affairs of others not justified by the circumstances under which the interference takes place. Policy ordinarily requires that a person who has conferred a benefit either by way of giving another services or by adding to the value of his land or by paying his debt ... should not be permitted to require the other to pay therefor, unless the one conferring the benefit had a valid reason for so doing....
>
> ....
>
> ... [W]here a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched.

*Id.,* comment a.

 In this case, we find that Western has established facts from which the jury could conclude that Western was not an "officious intermeddler." When the Chambers defaulted in 1977, Western became liable under its guaranty contract for the remaining amount due. The record does not indicate why the holder of the seller's interest did not exercise its rights against Western in October 1977 when the default first occurred. Nor does it indicate who was responsible for making the payments due

under the contract between October 1977 and January 1, 1979 when Delta purchased the contract. What is certain, however, is that at the time Western took possession of the mobile home and made the alleged repairs, the payments were in default. Thus, as of October 1977, the holder of the seller's interest could have insisted that Western pay the debt. Had Western done so, it would have become entitled to be subrogated to Delta's rights under the retail installment contract and to possession of the security. *See* 74 Am.Jur.2d *Suretyship* § 168 (1974). Thus, Western had an interest in seeing that the security for the debt was preserved and was therefore not an "officious intermeddler." *Cf. Beaver Flume & Lumber Co. v. Eccles,* 43 Or. 400, 73 P. 201 (1903). *See also* Restatement of Restitution § 80, comment d (1937).

We conclude, therefore, that the trial court was correct in vacating its order directing a verdict in favor of the Roscoes and in granting a new trial on all issues. The order granting a new trial is affirmed and the case is remanded for further proceedings consistent with this opinion.

HOLOHAN, C. J., GORDON, V. C. J., and HAYS and CAMERON, JJ., concur.