NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AGRICANN LLC,
*Plaintiff/Appellee/Cross-Appellant*,

*v.*

NATURAL REMEDY PATIENT CENTER LLC,
*Defendant/Appellant/Cross-Appellee*,

*and*

DAVID SANCHEZ,
*Defendant/Appellee.*

No. 1 CA-CV 20-0231
FILED 5-12-2022

Appeal from the Superior Court in Maricopa County
No. CV2016-001283
The Honorable James D. Smith, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Mills and Woods Law PLLC, Phoenix
By Sean A. Woods
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Ahwatukee Law Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Osborn Maledon, P.A., Phoenix
By Eric M. Fraser, Thomas L. Hudson, Hayleigh S. Crawford
*Co-Counsel for Defendant/Appellant/Cross-Appellee*

Greenspoon Marder LLP, Scottsdale
By Sharon A. Urias, Stuart Knight *Pro Hac Vice*
*Co-Counsel for Defendant/Appellant/Cross-Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

**¶1** Natural Remedy Patient Center, LLC ("Natural Remedy") appeals portions of the superior court's judgment in favor of Agricann, LLC ("Agricann"). Agricann cross-appeals portions of the same judgment granted in favor of Natural Remedy. For reasons that follow, we affirm the judgment, but vacate the damages award for Agricann and remand for further proceedings consistent with this decision.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2** Natural Remedy, a not-for profit entity, which holds a medical marijuana dispensary certificate issued by the Arizona Department of Health Services, formed a joint venture to grow and sell medical marijuana with Agricann, a for-profit entity, which held the lease to a facility suitable for medical marijuana production (the "Grow Facility").

**¶3** At the time of the joint venture, David Sanchez and his wife Kathy Sanchez were the principals of Natural Remedy. Shadi Zaki, though not a principal or agent of Natural Remedy, consulted on their behalf. Agricann's principals were Brig Burton and Imran Kazem.

**¶4** In May 2014, the parties entered a two-year dispensary agent contract (the "Management Contract") under which Agricann would cultivate and Natural Remedy would sell medical marijuana. The parties

2

formed Natural Agriculture, LLC[1] ("Natural Agriculture") to pay the joint venture's expenses, including rent, and to hold the lease rights to the Grow Facility.

¶5            Under the Management Contract, profits were to be shared as follows: "[a]ll distributions of [s]ales [i]ncome shall be paid on a pro-rata basis (i.e.[,] 80% of all gross sales from both the retail and wholesale operations shall be paid to [Agricann], and 20% shall be retained by [Natural Remedy]." Natural Remedy agreed to pay Agricann its share of the profits within five days of receipt of sales income and was subject to an interest penalty of 1% per day for late payments. It appears, however, that profits were not shared in this manner and that the parties later agreed to share profits equally.

¶6            An ongoing dispute developed over what Natural Remedy owed Agricann and whether either party was complying with its obligations under the contract's terms. Agricann then locked Natural Remedy out of the Grow Facility and contemplated suing Natural Remedy for amounts owed under the Management Contract. Consequently, in October 2015, approximately six months before the expiration of the Management Contract, the parties met to avoid a lawsuit and to find an amicable way to end their business relationship.

¶7            At the meeting, the parties contemplated an agreement that would alter their rights and obligations under the Management Contract and under which Natural Remedy would "buy out" Agricann's lease rights to the Grow Facility and obtain title to the equipment therein. During the meeting, a representative from Agricann, either Burton or Kazem, wrote the following terms on a sheet of a paper:

---

[1] The Management Contract refers to this entity as "Nature's Agriculture, LLC." However, the parties formed "Natural Agriculture, LLC."



¶8　　　　According to this document, (hereinafter, the "Breakup Deal") Natural Remedy would sublease the Grow Facility for $20,000.00 a month for three years, beginning on November 15, 2015, and ending with a $400,000.00 balloon payment. Although not self-evident from the document's four corners, the parties agree the Breakup Deal would include the transfer of title to equipment from Agricann to Natural Remedy and the transfer of Agricann's lease rights in the Grow Facility to Natural Remedy.

¶9　　　　The Breakup Deal was signed by Burton, as Agricann's representative, and by Sanchez, as Natural Remedy's representative.[2] Nevertheless, the parties dispute whether the Breakup Deal was a binding agreement.

¶10　　　　Following the meeting, the parties continued negotiations regarding additional terms related to the Breakup Deal, and Burton prepared several additional contract documents, including a personal guarantee, a promissory note, a security agreement, and a purchase and settlement agreement and release (the "Release Agreement") under which Agricann agreed to "settle[] and release[] [Natural Remedy] from its obligations, delinquent or otherwise, arising under the [Management Contract]." Burton then sent several emails to Natural Remedy in which he

---

[2] Although the Breakup Deal provided a space for Zaki to sign, he did not sign as he was not a principal or agent of Natural Remedy.

acknowledged that the Breakup Deal was created, in part, "to resolve the [debt] that [Natural Remedy] owes Agricann," and cautioned that, if the documents were not signed, Agricann would likely move to enforce the debts owed under the Management Contract. Unlike the Breakup Deal, these documents were never signed.

¶11 The parties dispute whether Natural Remedy made payments under the Breakup Deal but agree that Agricann was last paid in January 2016. In February 2016, Agricann sued Natural Remedy alleging, as relevant to this appeal, that Natural Remedy breached the Management Contract by failing to pay Agricann 80% of the gross sales, and that Natural Remedy breached the Breakup Deal by failing to make the required payments. In May or June 2016, Natural Remedy moved out of the Grow Facility. Before their departure, Natural Remedy allegedly found a new tenant to occupy the Grow Facility. At some point, Agricann lost its lease rights, which Agricann attributes to Natural Remedy's nonpayment.

¶12 The matter proceeded to a three-day bench trial. At trial, Burton, the signatory for Agricann, testified that it was his intent that the Breakup Deal would be binding. Kazem testified in support, acknowledging that while the parties anticipated signing a formal document, the parties agreed to the terms set forth in the Breakup Deal. Sanchez, the signatory for Natural Remedy, did not testify. Instead, only Zaki, Natural Remedy's independent contractor, who is neither a party to nor a signatory of the Breakup Deal, testified to the parties' intent. Zaki testified that the Breakup Deal reflected only "discussions towards a potential agreement." Burton also testified that under the Breakup Deal, Agricann gave up its rights under the Management Contract "going forward." He did not, however, testify as to whether the Breakup Deal included the settlement of debts owed by Natural Remedy under the Management Contract.

¶13 Agricann claimed damages of approximately $30 million, including interest, for Natural Remedy's breach of the Management Contract. Agricann also claimed damages of $1.065 million in principal, totaling approximately $15.5 million including interest, for Natural Remedy's breach of the Breakup Deal. A damages expert was not used; rather Burton calculated and testified to Agricann's damages. In its closing brief, Natural Remedy argued Agricann did not prove breach of the Management Contract or related damages and contended that the Breakup Deal was unenforceable.

¶14        The superior court ruled against Agricann on the Management Contract and made the following relevant findings: (1) the parties' course of performance and contemporaneous communications modified the Management Contract such that income was split equally, rather than 80/20; (2) Agricann's claim for a daily interest penalty of 1% for late payments of goods sold was unenforceable because it was a "form of liquidated damages" and functioned as an "impermissible penalty rather than enforceable liquidated damages;" (3) Agricann failed to show that Natural Remedy breached the modified, as opposed to original, Management Contract; and (4) Agricann failed to establish its damages persuasively.

¶15        By contrast, the superior court ruled in favor of Agricann on the Breakup Deal, making the following relevant findings: (1) the Breakup Deal was enforceable; (2) the Breakup Deal was a novation of the Management Contract; (3) Natural Remedy paid $20,000.00 in November 2015, $20,000.00 in December 2015, and $15,000.00 in January 2016; and (4) Natural Remedy breached the Breakup Deal by failing to make payments after January 2016. The court determined that Natural Remedy owed $5,000.00 for January 2016, the remaining thirty-three contract payments of $20,000.00, and the $400,000.00 balloon payment, totaling $1.065 million. The court noted that these were "liquidated amounts," and awarded ten percent statutory pre-judgment interest.

¶16        Lastly, the court denied both parties' requests for fees holding that neither side was the successful party.

¶17        Both parties moved for reconsideration and the court denied the motions. The superior court entered judgment. Natural Remedy timely appealed and Agricann timely cross-appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

I.    *Natural Remedy Appeals the Superior Court's Ruling on the Breakup Deal*

¶18        Natural Remedy argues the Breakup Deal was not an enforceable contract and also argues, in the alternative, that if the Breakup Deal was enforceable, the damages award has "no basis in the law." On these bases, Natural Remedy requests that we reverse the superior court's ruling.

¶19        On appeal from a bench trial, we view the "evidence and all reasonable inferences in the light most favorable to sustaining the superior

court's ruling," *Town of Marana v. Pima Cnty.*, 230 Ariz. 142, 152, ¶ 46 (App. 2012), and we will affirm the court's judgment if it is correct for any reason, *FL Receivables Tr. 2002-A v. Ariz. Mills, L.L.C.*, 230 Ariz. 160, 166, ¶ 24 (App. 2012). "We defer to a superior court's findings of fact unless clearly erroneous, but we review its conclusions of law de novo." *Town of Marana*, 230 Ariz. at 152, ¶ 46. "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Kocher v. Dep't of Revenue of Ariz.*, 206 Ariz. 480, 482, ¶ 9 (App. 2003). The validity and enforceability of a contract and whether the court applied the correct measure of damages are mixed questions of fact and law that we review de novo. *Armiros v. Rohr*, 243 Ariz. 600, 605-06, ¶¶ 16, 21 (App. 2018).

### A.     *Enforceability of the Breakup Deal*

**¶20**     Natural Remedy asserts that the Breakup Deal is not an enforceable contract but rather represents only the parties' "preliminary negotiations," as demonstrated by the lack of certain "material terms" and by the parties' contemporaneous behavior and conduct. Agricann asserts that the Breakup Deal was a binding document, not a mere preliminary negotiation.

**¶21**     A contract may be formed if it is clear the parties intended to be bound by its terms. *Johnson Int'l, Inc. v. City of Phx.*, 192 Ariz. 466, 470, ¶ 26 (App. 1998). The parties' anticipation of the creation of a more complete, thorough contract will not prevent enforcement of an otherwise binding contract unless a party has expressed the intention not to be bound until the future writing is executed. *See id.* at 471, ¶ 31 (concluding initial agreement was not binding where one party expressed the intention not to be bound until execution of the final agreement); 1 Samuel Williston & Richard A. Lord, Williston on Contracts § 4.11 (4th ed. 1999) ("[T]o avoid the conclusion that a contract has been formed it must be found as a fact that at least one of the parties has expressed the intention not to be bound until the [future] writing [is] executed."); *AROK Constr. Co. v. Indian Constr. Servs.*, 174 Ariz. 291, 295, 299 (App. 1993) (concluding that, even if the parties anticipated making a written agreement, that fact would not preclude the finding that an oral contract was made if the parties intended to be bound). In determining whether the parties intended to be bound, a court may look to the writing, the parties' conduct, and the surrounding circumstances. *Muchesko v. Muchesko*, 191 Ariz. 265, 268 (App. 1997). The focus is on objective evidence, not on the "hidden intent of the parties." *Id.* (quoting *Modular Sys., Inc. v. Naisbitt*, 114 Ariz. 582, 585 (App. 1977)).

**¶22**         Because the law "favors enforcement when it is clear that the parties intended themselves to be bound," "absent or uncertain terms are not fatal to the enforceability of an otherwise binding contract." *AROK*, 174 Ariz. at 297; *see also Schade v. Diethrich*, 158 Ariz. 1, 10-11 (1988) (holding promise to enter into an equitable and fair settlement with the specific terms to be resolved later, sufficiently manifested mutual assent to be bound despite the absence of agreement on the most basic terms). Whether an agreement resolves every matter is not the touchstone for enforceability. *AROK*, 174 Ariz. at 297. Rather, an agreement's terms are sufficiently certain if they "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Id.* (quoting Restatement (Second) of Contracts § 33(2) (1981)). Thus, omitted terms, even those "essential" to the contract, "are not invariably fatal to the rights of the parties to obtain enforcement of their bargain." *Id.* at 298.

**¶23**         Accordingly, the questions before us are whether the parties intended to be bound by the Breakup Deal, despite anticipating a future, more formal agreement and, if so, whether the terms of the Breakup Deal are sufficiently certain to be enforceable.

### 1.     *The Parties Intended to Be Bound by the Breakup Deal*

**¶24**         Natural Remedy contends the parties' contemporaneous communications and behavior, particularly their contemplation of a more formal agreement, demonstrates that the parties did not intend to be bound by the Breakup Deal. We disagree. Viewed in the light most favorable to upholding the court's ruling, *Town of Marana*, 230 Ariz. at 152, ¶ 46, the writing, the parties' conduct, and the surrounding circumstances demonstrate that the parties' intended to be bound by the terms included in the writing, *see Muchesko*, 191 Ariz. at 268.

**¶25**         We first consider whether the writing establishes the parties' intent to be bound. At the October 2015 meeting, the parties not only reduced their agreement to writing, but also signed the agreement. Notably, the Breakup Deal did not contain a "non-binding" clause, or any language indicating that the parties did not intend to be bound by its terms. *See Johnson*, 192 Ariz. at 473, ¶¶ 42-44 (holding that where a preliminary agreement contained non-binding language, the agreement could not bind the parties). Accordingly, we may look beyond the writing to determine the parties' intent. *See id.* at ¶ 43.

**¶26**         After signing the Breakup Deal, the parties acted consistently with a binding agreement. As the superior court found, Natural Remedy

was given possession of the Grow Facility and Natural Remedy does not dispute this fact. The superior court also found that Natural Remedy paid "$20,000.00 in November and [$20,000.00 in] December 2015 and [$]15,000.00 in January 2016." Natural Remedy argues this finding was in error, citing only an internal, undated spreadsheet created by Zaki. At trial, Burton and Zaki gave conflicting testimony regarding the payments and the only piece of non-testimonial evidence on the matter was Zaki's internal, undated spreadsheet.

¶27 Burton testified that Natural Remedy made three payments under the Breakup Deal—$20,000.00 in November, $20,000.00 in December, and $15,000.00 in January. By contrast, Zaki testified that Natural Remedy did not make any payments under the Breakup Deal. On cross-examination, Zaki's prior deposition testimony was used to show he had previously acknowledged that two payments totaling $20,000.00 were made in December 2015 and a payment of $15,000.00 was made in January 2016. Zaki's spreadsheet confirms this account but fails to provide dates or reasons for the payments. We acknowledge that conflicting testimony exists. However, "where there is a dispute in the evidence from which reasonable [persons] could arrive at different conclusions as to the ultimate facts, we will not disturb the findings of a trial court." *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 296, ¶ 16 (App. 2000) (citations omitted); *see also In re Estate of Zaritsky*, 198 Ariz. 599, 601, ¶ 5 (App. 2000) (noting that the appellate court gives "due regard to the opportunity of the [superior] court to judge the credibility of witnesses").

¶28 Lastly, the circumstances surrounding the creation of the Breakup Deal support the finding that the parties intended to be bound by its terms. Prior to their meeting, Agricann locked Natural Remedy out of the Grow Facility and contemplated suing Natural Remedy. The parties met in October to resolve their problems under the Management Contract and to avoid a lawsuit. On this record, substantial evidence supports the court's finding that the parties' intended to be bound by the terms of the Breakup Deal. *See Kocher*, 206 Ariz. at 482, ¶ 9.

> 2. *The Terms of the Breakup Deal are Sufficiently Certain to be Enforceable*

¶29 Natural Remedy argues the Breakup Deal is unenforceable because the document did not include certain additional terms discussed by the parties, such as how the agreement would alter the parties' rights and obligations under the Management Contract, how title to the equipment would transfer, whether the agreement would contain a

personal guarantee by the Sanchezes, and whether the agreement would include an interest penalty for late payments.

¶30 Because the parties intended to be bound by the Breakup Deal, the law favors its enforcement. *See AROK*, 174 Ariz. at 297. Omitted terms, even those essential to the contract, are not fatal to its enforceability, so long as the agreement's terms "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Id.* (quoting Restatement (Second) of Contracts § 33(2)).

¶31 Here, the terms of the Breakup Deal are sufficiently certain to render the Breakup Deal enforceable. Natural Remedy breached the contract at a point when the only terms necessary to determine the existence of the breach (payments under the agreement) and for giving an appropriate remedy (agreed-upon payments) were present. Because Natural Remedy breached the contract—by failing to make the required payments—the absence of additional contract terms contemplated by the parties is not fatal to Agricann's claim. "Only '[i]f the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken' does a contract not exist." *Id.* at 298 (quoting Restatement (Second) of Contracts § 33 cmt. a).

¶32 Accordingly, the superior court did not err in finding the contract enforceable.

      B.    *The Damages Award*

¶33 Natural Remedy requests this court reverse the damages award arguing it has "no basis in the law." Whether the court applied the correct measure of damages is a mixed question of fact and law we review de novo. *Armiros*, 243 Ariz. at 605-06, ¶¶ 16, 21.

¶34 Contract remedies are designed to redress the plaintiff's "loss of the benefit of the bargain." *Arrow Leasing Corp. v. Cummins Ariz. Diesel, Inc.*, 136 Ariz. 444, 447 (App. 1983). Accordingly, one of the principal goals of remedying a breach of contract is to "[e]nforc[e] the expectation interests of the parties." *John Munic Enterprises, Inc. v. Laos*, 235 Ariz. 12, 18, ¶ 18 (App. 2014). Expectation damages, therefore, are "intended to put the injured party 'to the extent possible . . . in as good a position as he would have been in had the contract been performed.'" *Ramsey v. Ariz. Registrar of Contractors*, 241 Ariz. 102, 107, ¶ 12 (App. 2016) (quoting Restatement (Second) of Contracts § 347 cmt. a). However, in doing so, the court must adhere to the maxim that "a party should not profit more from breach of a contract than its full performance." *John Munic, 235 Ariz.* at 18, ¶ 19; *see also*

*Int'l Prod. Specialists, Inc. v. Schwing Am., Inc.*, 580 F.3d 587, 601 (7th Cir. 2009) (remanding where damages award placed non-breaching party "in a better position than it would have been in had [breaching party] performed"); *see also* 11 Joseph M. Perillo, Corbin on Contracts § 55.3 (rev. ed. 2005) ("[I]t is a basic tenet of contract law that the aggrieved party will not be placed in a better position than it would have occupied had the contract been fully performed."). Therefore, the calculation of expectation damages "necessarily includes a deduction for 'any cost or other loss that [the injured party] has avoided by not having to perform.'" *Ramsey*, 241 Ariz. at 107, ¶ 12 (quoting Restatement (Second) of Contracts § 347(c)).

**¶35**　　　　Here, the court, by awarding Agricann the full amount due under the Breakup Deal, less the amounts paid by Natural Remedy, awarded Agricann its expectation under the contract. However, because nothing in the court's ruling suggests that it considered the costs that Agricann avoided by not having to perform, such as, but not limited to, the rent payments and the transfer of the equipment, the court's award was in error. *See, e.g., id.*

**¶36**　　　　Because the court's error placed Agricann in a better position than it would have been in had the contract been fully performed, we vacate the damages award and remand with instruction for the superior court to consider the costs that Agricann avoided by not having to perform.

II.　　*Agricann Cross-Appeals the Superior Court's Ruling on the Management Contract*

**¶37**　　　　Agricann cross-appeals the superior court's entry of judgment in favor of Natural Remedy on the Management Contract. Agricann argues the court erred by finding: (1) that the parties validly modified the Management Contract; (2) that Agricann did not establish damages under the modified Management Contract; and (3) that the interest rate was an impermissible penalty.

**¶38**　　　　Because we will affirm the court's judgment if it is correct for any reason, *Ariz. Mills, L.L.C.*, 230 Ariz. at 166, ¶ 24, we must determine whether the judgment rather than the reasoning of the superior court was correct, *Picaso v. Tucson Unified Sch. Dist.*, 217 Ariz. 178, 181, ¶ 9 (2007).

**¶39**　　　　The superior court, finding that the parties modified the Management Contract, held that Agricann did not establish breach or resulting damages under the Management Contract. While Agricann challenges this finding on appeal, we need not address the court's reasoning because we conclude the judgment was correct. *See id.*

¶**40**　　　　As noted, *supra* ¶ 15, the superior court found the Breakup Deal was a novation of the Management Contract which "replac[ed] the Management Contract." While the court explained that a novation extinguishes obligations arising under a previous agreement, the court did not specify whether the Breakup Deal extinguished the debts and claims arising under the Management Contract.[3] Because we conclude the Breakup Deal was a complete novation of the Management Contract, that is, it extinguished the debts and claims arising under the Management Contract as well as the future obligations due under the Management Contract, we affirm the court's judgment.

¶**41**　　　　A novation is the "substitution by mutual agreement of . . . a new debt or obligation for an existing one which is thereby extinguished." *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 91 (1995) (quoting *Western Coach Corp. v. Roscoe*, 133 Ariz. 147, 152 (1982)). Thus, "[t]he effect of a novation is to discharge the original debt." *Id.* A novation may be express, or it may be "implied from the facts and circumstances surrounding the transaction and the conduct of the parties thereafter." *United Sec. Corp. v. Anderson Aviation Sales Co., Inc.*, 23 Ariz. App. 273, 275 (1975).

¶**42**　　　　The facts and circumstances surrounding the creation of the Breakup Deal, as well as the parties' conduct following its execution, demonstrate that the Breakup Deal novated the Management Contract and extinguished the debts arising therefrom. Just before the parties entered the Breakup Deal, Agricann locked Natural Remedy out of the Grow Facility and contemplated suing Natural Remedy for amounts owed under the Management Contract. To be sure, the parties entered the Breakup Deal to avoid a lawsuit over the Management Contract. Moreover, following its execution, Burton prepared the Release Agreement under which Agricann agreed to release Natural Remedy from its "obligations, delinquent or otherwise, arising under the [Management Contract]" and sent several emails to Natural Remedy in which he acknowledged that the Breakup Deal was created to resolve the debt that Natural Remedy owed Agricann.

---

[3] Agricann asserts the finding of novation is supported by the evidence but contends that the superior court "concluded that the effect of the Breakup Deal was a 'novation' of the Management Contract for the remainder of its term." In other words, Agricann asserts that the superior court found the Breakup Deal "novate[d] the Management Contract going forward" but did not extinguish Natural Remedy's obligation to pay past amounts due under the Management Contract. The superior court made no such express finding.

**¶43** Because the Breakup Deal was a novation of the Management Contract, Natural Remedy was released from liability under the Management Contract. *See Western Coach Corp.*, 133 Ariz. at 152 (noting that, if a novation had occurred, the defendants would have been released from liability under the original contract). Accordingly, Agricann could not establish that Natural Remedy breached the Management Contract. On this basis, we affirm the judgment of the superior court.

## CONCLUSION

**¶44** Both parties have requested attorneys' fees and costs on appeal pursuant to A.R.S. § 12-341.01. Because neither party is fully successful on appeal, we decline to award fees or costs to either party. Similarly, both parties have requested that on remand we instruct the superior court to reconsider the prevailing party for purpose of an award of attorneys' fees and costs at the superior court level. We decline to do so.

**¶45** For these reasons, we affirm the judgment but vacate the damages award and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA