790 P.2d 372

G. David CHINCHURRETA, Plaintiff–Counterdefendant–Appellant,

v.

EVERGREEN MANAGEMENT, INC., an Idaho corporation, d/b/a Evergreen Manor; and Miles Taggart, individually, Defendants–Counterclaimants,

and

State of Idaho, Department of Health & Welfare, Intervenor,

and

Lowell Christensen and Paul Christensen, Intervenors–Respondents.

No. 17479.

Court of Appeals of Idaho.

Aug. 10, 1989.

Robert C. Paine, Paine & Pica, Boise, for appellant Chinchurreta.

Bradley Hall (argued) and Donald Lojek, Lojek & Hall, Ctd., Boise, for respondents Christensen.

Jim Jones, Atty. Gen. by Michael Stoy, Deputy Atty. Gen., Boise, for intervenor, Dept. of Health and Welfare. (Appearance only.)

Before WALTERS, C.J., BURNETT, J. and BENGTSON, J. Pro Tem.

PER CURIAM.

This is a companion case to *Chinchurreta v. Christensen*, 117 Idaho 588, 790 P.2d 369 (Ct.App.1989), decided today. Like that case, this one involves a dispute over entitlement to Medicaid funds that were attached in a debt collection suit. Unlike the companion case, however, the funds were ordered to be released, not to the plaintiff, David Chinchurreta, but to the intervenors, Lowell and Paul Christensen. The dispositive question here is whether the Christensens were officious intermeddlers in the operation of a health care facility and, therefore, were not entitled to the Medicaid funds. We affirm the district court's order.

As noted in the companion case, Chinchurreta loaned $110,000 to Evergreen Management, Inc., and to Evergreen's controlling shareholder, Miles Taggart. Evergreen did business as the Homedale Care Center, a health care facility. Evergreen and Taggart had a health care provider contract with the Department of Health and Welfare. Consequently, their facility was partially funded by payments from the Department of Health and Welfare for services provided to Medicaid recipients. The facility was located on property rented from the Christensens. It was managed by a health care administrator, Keith Holloway.

Evergreen and Taggart ultimately defaulted on their debt to Chinchurreta. In July, 1987, Chinchurreta filed a complaint to recover the money owed. In November, the district court ordered that a writ of attachment be issued to the county sheriff requiring that all funds due and owing Evergreen be deposited with the district court. Chinchurreta obtained a default judgment in his favor on January 4, 1988.

During this time, Taggart and Evergreen evidently failed to pay rent to the Christensens. On December 8, 1987, the Christensens terminated their lease with Taggart. Taggart subsequently left the state. Although the Department of Health and Welfare continued to regard Taggart and Evergreen as the only contractually authorized health care providers at the facility, no patients were withdrawn. The facility stayed open until February 11, 1988, when a new provider, Rodney Roe, signed a contract with Health and Welfare. During the two-month hiatus, when Roe had yet to sign a contract and Taggart was nowhere to be found, the Christensens stepped in and kept the facility running. They paid

the labor costs, bought the food, admitted patients, etc. Ultimately they sank about $40,000 of their own funds into the facility's operation. The Department of Health and Welfare disbursed $24,688 to the facility for its January services to patients. When Chinchurreta attached the money, the Christensens intervened. The Christensens argued that they, and not Chinchurreta, were entitled to this money because they had been the de facto health care providers during January.

After a hearing, the district court decided that the health care provider during January, 1988, was Taggart and Evergreen, Inc., not the Christensens. However, the judge also concluded the Christensens had an equitable right to the funds, since they had operated the facility during January. Rather than releasing the attached funds to Chinchurreta, the district judge set up a constructive trust, recognizing legal title to the funds in Taggart but granting an equitable title to the Christensens. Chinchurreta has appealed.

■ Chinchurreta argues that the Christensens were mere volunteers. It is well settled that a person cannot—by way of set-off, counterclaim or direct action—recover money which he or she "has voluntarily paid with full knowledge of all the facts, and without any fraud, duress or extortion, although no obligation to make such payment existed." *McEnroe v. Morgan,* 106 Idaho 326, 335, 678 P.2d 595, 604 (Ct.App.1984). This rule, which at first blush appears harsh, exists to protect persons who have had unsolicited "benefits" thrust upon them. RESTATEMENT OF RESTITUTION § 2 (1937).

■ Here, however, the persons directly benefited by the Christensens' actions have not suffered the imposition of unwarranted or uninvited financial burdens. The owner and manager of the Homedale facility have not appeared to object to the Christensens' services nor to challenge the Christensens' request for the money. So far as the record shows, the patients at the Homedale facility have not suffered any financial burdens. If any burden has arisen from continued operation of the facility, it has been willingly borne by the Department of Health and Welfare, which disbursed the January payment. The person seeking to invoke the rule against mere volunteers or officious intermeddlers, Chinchurreta, has not been subjected to a financial burden. Although he claims to be disadvantaged by the Christensens' claim to the January payment, the disadvantage is illusory because the payment could not have been made at all if the Christensens had not kept the facility in operation. Accordingly, we hold that this case falls outside the purpose of the officious intermeddler rule, and that the rule will not be applied for the benefit of Chinchurreta.

■ Chinchurreta also contends that the district court misapplied the doctrine of a constructive trust. Chinchurreta asserts that a constructive trust may be imposed only as a remedy for wrongdoing, such as obtaining property by fraud or misrepresentation. It is true, of course, that the constructive trust is available as a remedy in such cases. However, it is not invariably so limited.

> A constructive trust is a remedial device created primarily to prevent unjust enrichment; equity compels the restoration to another of property to which the holder thereof is not justly entitled. (Citations omitted) ... [A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled.

*Taylor v. Polackwich,* 145 Cal.App.3d 1014, 194 Cal.Rptr. 8, 13 (2nd Dist.1983). As noted in G. BOGERT, HANDBOOK OF THE LAW OF TRUSTS (5th ed. 1973), at 290, "[t]he only problem of great importance in the field of constructive trusts is to decide whether, in the numerous and varying fact situations presented to the courts, there is a wrongful holding of property and hence a potential unjust enrichment of the defendant."

■ In this case, Chinchurreta has no claim to the January money except by way of attachment to collect a debt owed by Evergreen and Taggart. However, Evergreen and Taggart have no substantively

cognizable claim to the money. Although they were the nominally contracting parties with the Department of Health and Welfare in January, they did not operate the facility and they performed no services for which compensation was due. The services for which the money has been disbursed were performed by the Christensens. The district court determined that releasing the January money to Chinchurreta rather than to them would create an unjust enrichment. The constructive trust was imposed upon the funds in order to prevent this result. We find no error.

Chinchurreta further asserts that the constructive trust violates certain provisions of the Idaho statutes relating to trusts. However, those statutes regulate the operation of ordinary trusts in law; they do not purport to govern the use of constructive trusts as a broad remedial tool by courts in equity.

Accordingly, the order of the district court, directing that the attached funds be released to the Christensens, is affirmed. Costs to the respondents, Christensen. No attorney fees on appeal.