941 P.2d 350

**Carl CURTIS, d/b/a Eastgate Phase II Homeowners' Association, Plaintiff–Respondent, Cross Appellant,**

v.

**Martin BECKER and Theresa Becker, husband and wife, Defendants–Appellants, Cross Respondents.**

No. 22627.

Court of Appeals of Idaho.

June 13, 1997.

Petition for Review Denied
Aug. 15, 1997.

Stephan, Kvanvig, Greenwood, Stone & Trainor, Twin Falls, for appellants. Laird B. Stone argued.

Rosholt, Robertson & Tucker, Twin Falls, for respondent. Gary D. Slette argued.

WALTERS, Chief Judge.

This is a dispute over the cost of improvements made to two lots in a residential subdivision. Carl Curtis, the developer, filed an action against Martin and Theresa Becker, claiming that he was compelled by the Plan-

ning and Zoning Committee of the City of Twin Falls (the City) to complete specific improvements to the subdivision, which included two lots owned by the Beckers. Curtis alleged that as a result of these improvements, the Beckers were unjustly enriched. The Beckers defended on the ground that because the purchase price they paid the original developer for the lots included the cost for improvements of the type made by Curtis, the Beckers should not be required to pay again for these improvements. The district court held that the Beckers were unjustly enriched, and awarded damages and costs to Curtis. The Beckers appeal from the district court's judgment, and Curtis has cross-appealed. For the reasons set forth below, we reverse the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early 1980's, the City approved the development of a residential subdivision known as the Eastgate Subdivision (the subdivision). Late in 1983, Keith Detmer, the original developer, sold Lots 14 and 15, in Block 2 (hereafter referred to as Lots 14 and 15), to Martin and Theresa Becker for $20,-000.[1] Detmer began developing the subdivision, but ran into financial difficulties. On February 25, 1990, Carl Curtis purchased the subdivision, which consisted of several undeveloped lots, at a tax sale. Lots 14 and 15 remained the property of the Beckers.

Curtis submitted an application to the City requesting a replatting of the subdivision by removing a traffic island and by expanding some of the lot sizes. On April 30, 1991, the City granted Curtis's application with the proviso that Curtis comply with the City's recommendation to complete Eastgate Drive to Fourth Avenue East. Improvements along Eastgate Drive were to include the installation of water and sewer lines, the paving of Eastgate Drive and the pouring of curbs, gutters and sidewalks on both sides of

the paved street. Lots 14 and 15, owned by the Beckers, were located along Eastgate Drive. On June 12, 1992, Curtis executed an Improvement Agreement for Developments with the City (hereinafter referred to as the Improvement Agreement) wherein he agreed to the proviso requiring the completion of Eastgate Drive.

Development of the subdivision began in July of 1992. Initially, Curtis tried to avoid improving Lots 14 and 15 by paving the entire length of Eastgate Drive except for the half of the lane abutting the Becker property. The City informed Curtis that to be in compliance with the Improvement Agreement, he had to pave the entire length of Eastgate Drive, including the portion of the lane in front of Lots 14 and 15. The Beckers objected to the development of their property by erecting barricades. Curtis removed the barricades, and completed developing the subdivision in October of 1992. On March 23, 1993, Curtis sent a letter to the Beckers requesting payment for the improvements made to their lots. The Beckers refused Curtis's demand. In June of 1993, the Beckers sold Lots 14 and 15 for $38,000.

Curtis filed an action against the Beckers in September of 1993, claiming that he was compelled by the City to make the improvements to the Beckers's lots and, as a result, the Beckers were unjustly enriched in the amount of $24,950. The Beckers responded in the action by contending that they were not liable to Curtis because they had objected to his work on their property, and claiming also that since the purchase price for the lots from Detmer included the cost of improvements of the type made by Curtis, they should not have to pay twice for the same improvements. Both parties requested awards of costs and attorney fees. After a court trial, the district court held that the Beckers were unjustly enriched. The court awarded damages of $18,000 together with litigation costs of $1,701.06 to Curtis. After entertaining motions for reconsideration, the court confirmed the award to Curtis, precip-

1. The Beckers also owned Lots 12 and 13 in Block 2 of the subdivision; however only Lots 14

itating this appeal.[2]

## II. ISSUES ON APPEAL

The Beckers assert that the district court erred in deciding that they had been unjustly enriched by the improvements Curtis made to Lots 14 and 15. They specifically argue that the court improperly held that: (1) Curtis did not act officiously in conferring a benefit upon them; and (2) even if they had been unjustly enriched, the award of $18,000 in damages, plus statutory interest accrued thereon, was excessive.

On cross-appeal, Curtis contends that the district court erred by denying his claim for recovery of attorney fees incurred in the action.

Both parties seek costs and attorney fees on appeal.

## III. STANDARD OF REVIEW

Appellate review of a trial court's decision concerns whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. I.R.C.P. 52(a); *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991); *Ficarro v. McCoy*, 126 Idaho 122, 125, 879 P.2d 30, 32 (Ct.App.1994). The Idaho Rules of Civil Procedure provide that: "In all actions tried upon the facts without a jury ... [f]indings of fact shall not be set aside unless clearly erroneous." I.R.C.P. 52(a); *Muniz v. Schrader*, 115 Idaho 497, 500, 767 P.2d 1272, 1275 (Ct.App.1989). The task of weighing evidence and finding facts is within the province of the trial court and we will not set aside findings made by the trial court unless they are clearly erroneous. *Alumet, supra; Muniz, supra.* Further, we will give due regard to the opportunity of the trial judge to weigh conflicting testimony and to judge the credibility of witnesses. *Stuart v. State*, 127 Idaho 806, 813, 907 P.2d 783, 790 (1995). We must accept the trial court's findings of

fact supported by substantial and competent, though conflicting, evidence. *Id.*

## IV. DISCUSSION

### A. The Doctrine of Unjust Enrichment.

In its Amended Memorandum Decision, filed on October 31, 1995, the district court noted that both parties debated the meaning of the following clause in the Detmer–Becker Purchase Agreement (Exhibit A at the trial, hereafter referred to as the Purchase Agreement), in which the Beckers purchased Lots 14 and 15 from Detmer:

8. The parties agree that this agreement contains the following additional terms and conditions: The described property is undeveloped, and buyers are purchasing property as is without time limit as to development of. However, the property will be developed according to city specifications at an undisclosed future date.

The district court determined that the clause was ambiguous but held that the exact intent of the parties as to the meaning of this clause was not an issue. Rather, the relevant issue before the court was whether Curtis should have either enforced the Purchase Agreement, or made the improvements to the lots at no cost to the Beckers. In this regard, the district court found that: (1) Curtis was not in privity of contract with Detmer, so Curtis had no legal basis upon which he could have enforced any obligation of Detmer to install improvements under the Purchase Agreement; (2) because Curtis was not in privity of contract with Detmer, Curtis was not required to make improvements to Lots 14 and 15 free of charge to the Beckers; and (3) if the Purchase Agreement included the cost of the improvements, it was the Beckers's, not Curtis's, responsibility to enforce the agreement against Detmer. The district court also rejected the Beckers's claim that Curtis was an officious intermeddler, finding that Curtis was required by the City to develop the Beckers's property in order to at-

---

and 15 are at issue in this case.

**2.** While this action was pending in the district court, the Beckers filed a Notice of Tort Claim with the City on August 16, 1994. In December 1994, the City was served with a third-party complaint filed by the Beckers. The district court granted summary judgment in favor of the City, holding that the Beckers's tort claim was untimely pursuant to I.C. § 6–908. According to the record before us, the Beckers did not appeal from this order.

tain the City's approval for replatting the subdivision.

The Beckers contend that the district court erred in holding that they were unjustly enriched, and that Curtis was not an officious intermeddler. They submit that the Improvement Agreement required Curtis to develop only those lots which he owned and for which he had obtained authorization from the owners who agreed to the improvements. The Beckers argue that they did not give Curtis authorization to develop their lots, and specifically informed Curtis that the lots were not to be improved. They submit that because Curtis did not receive the proper authorization, the City could not have forced him to develop the lots before giving its final approval for replatting the subdivision.

Curtis responds that it would be inequitable for the Beckers to retain the cost of the improvements without payment because: (1) Curtis did not have standing to enforce the Purchase Agreement between the Beckers and Detmer; (2) the Beckers made no attempt to enforce Detmer's obligation to make the improvements pursuant to the Purchase Agreement; (3) Curtis attempted to achieve a compromise with the City to avoid improving the lots, but was unsuccessful; and (4) improvements to the lots were well underway before Curtis was notified of the Beckers's desire not to have the lots developed.

■ The doctrine of unjust enrichment sounds in quasi-contract or implied-in-law contract. *Beco Constr. Co., Inc. v. Bannock Paving Co., Inc.,* 118 Idaho 463, 466, 797 P.2d 863, 866 (1990). The theory is based upon the defendant having received a benefit which would be inequitable to retain at least without compensating the plaintiff to the extent that retention of the benefit is unjust. *Id.* In order to establish the prima facie case for unjust enrichment, the plaintiff must show that there was: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff of the value thereof. *Idaho Lumber, Inc. v. Buck,* 109 Idaho 737, 745, 710 P.2d 647, 655 (Ct.App.1985).

■ The principle of unjust enrichment, however, is applicable only if the person conferring the benefit is not an "officious intermeddler." The officious intermeddler rule essentially provides that a mere volunteer who, without request therefor, confers a benefit upon another is not entitled to restitution. This rule exists to protect persons who have had unsolicited "benefits" thrust upon them. *Chinchurreta v. Evergreen Management, Inc.,* 117 Idaho 591, 593, 790 P.2d 372, 374 (Ct.App.1989) (adopting RESTATEMENT (FIRST) OF RESTITUTION § 2 (1937)). A person is not an intermeddler if such person has a valid reason for conferring the benefit, such as protecting an interest. *See* comments to § 2 of RESTATEMENT (FIRST) OF RESTITUTION, *supra. Cf. Western Coach Corp. v. Roscoe,* 133 Ariz. 147, 650 P.2d 449, 456 (1982).

■ It is undisputed that a benefit was conferred upon the Beckers by Curtis, and that there was an appreciation by the Beckers of this benefit. The issue presented by this case is whether it would be inequitable for the Beckers to retain the benefit without paying for its value when it was forced upon them by Curtis. Resolution of this question requires a review of the Purchase Agreement and the Improvement Agreement to determine whether Curtis had a valid reason for conferring a benefit by making the improvements on the Beckers's property.

The district court found that the City required Curtis to complete Eastgate Drive in order to obtain approval for replatting of the subdivision. The court also found that Martin Becker was aware that two of his lots were among the lots to be developed before the City would give its approval for completion of the subdivision. This latter finding was based on conversations Martin had with City officials which Martin had documented in his day planner. When asked at trial why he did not call Detmer to develop the lots when Curtis was improving the surrounding property, Martin responded that he assumed that once Curtis received a copy of the Purchase Agreement, "the problem would be solved." The district court found that the Beckers had assumed that either Detmer would be bound by the Purchase Agreement

or that Curtis would install the developments at no cost to the Beckers. The court also inferred that the Beckers had made no demand for performance upon Detmer because they believed Detmer to be insolvent. After Curtis received a copy of the Purchase Agreement, the Beckers made no further effort to resolve the issue.

Assuming, arguendo, that the cost of the improvements was encompassed in the purchase price paid by the Beckers for the lots under the Purchase Agreement, we find no merit to the Beckers's argument that Curtis should have made the improvements free of charge to the Beckers under this agreement. Such logic requires Detmer to have delegated his duties to Curtis, and no evidence exists in the record to show that Detmer delegated his duties to anyone. Because Curtis had no obligation to the Beckers under the Purchase Agreement, we turn our attention to the Improvement Agreement.

 The Improvement Agreement between Curtis and the City obligated Curtis (designated as the Developer) to complete the construction of certain amenities, including water and sewer systems and the paving, curbs, gutters and sidewalks for Eastgate Drive. Curtis claimed that the Beckers should be liable to him for the benefit conferred on them by the street improvements to Lots 14 and 15 because Curtis had no alternative but to perform under the Improvement Agreement. In response, the Beckers essentially posed the "clean hands" doctrine as a defense to Curtis's claim. Under that doctrine a party who seeks equity must enter the court with "clean hands." More specifically, a litigant may be denied equitable relief by a court on the ground that his conduct "has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy at issue." *Gilbert v. Nampa School District No. 131*, 104 Idaho 137, 145, 657 P.2d 1, 9 (1983); *Hobbs v. First Interstate Bank of Idaho, N.A.*, 109 Idaho 990, 992, 712 P.2d 691, 693 (Ct.App.1985). In applying the clean hands doctrine, a court has discretion to evaluate the relative conduct of both parties and to determine whether the conduct of the party seeking an equitable remedy should, in the light of all the circumstances, preclude such relief. *Dursteler v. Dursteler*, 108 Idaho 230, 697 P.2d 1244 (Ct.App.1985).

Paragraph two on the first page of the Improvement Agreement, introduced at trial as Exhibit M, provides that

there is attached hereto and incorporated herein as if the same were set out in full a certified copy of the deed to the real property showing ownership of said real property to be in [the] Developer, or, as the case may be, . . . a copy of the deed to the above described real property showing ownership in fee simple in someone other than [the] Developer together with a notarized authorization, signed by the real property owner, authorizing [the] Developer to act on behalf of said real property owner, . . . .

There is not attached to the Improvement Agreement admitted in the trial as Exhibit M either a copy of the Beckers's deed or a copy of any authorization from the Beckers permitting Curtis to act on the Beckers's behalf with respect to the latters' property.

The district court found that: (1) the Beckers did not give their authorization for the improvements; (2) Curtis tried to avoid improving Lots 14 and 15 by paving the entire length of Eastgate Drive except for the half of the lane abutting the Beckers's property; and (3) once the City informed Curtis that he had to pave the entire length of Eastgate Drive, including the portion that ran in front of the Beckers's property, Curtis conducted the work. The court made no findings as to whether Curtis obtained and attached copies of the deeds showing ownership in fee simple in the Beckers and the Beckers's authorization allowing Curtis to act on their behalf. However, we do not find it necessary to remand this case to the district court for such a finding inasmuch as the parties agree that no such authorization was given. Even though we hold that sufficient, competent evidence exists in the record to support the district court's findings so far as made, the court did not complete the required legal analysis.

In order for Curtis to recover on an equitable remedy, such as unjust enrichment, it was necessary for the district court to review

Curtis's actions to determine whether he entered the court with clean hands. The conclusion to be reached through application of the clean hands doctrine in this case is inescapable.

Curtis was aware, as a party to the Improvement Agreement, that he was required to obtain the proper authorization from the Beckers (to be attached to the Agreement) before making the improvements to Lots 14 and 15. It is undisputed that Curtis failed to fulfill this term of the Improvement Agreement. There is no indication in the record that Curtis informed the City either of his failure to meet the requirement or that the Beckers had objected to the installation of improvements on their property, nor is there any evidence indicating whether Curtis sought the City's assistance in obtaining the necessary authorization from the Beckers. However, it is clear that Curtis made the improvements to Lots 14 and 15 knowing that he had not obtained the proper approval from the Beckers. Curtis's actions fall within the essence of "conduct [that] has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue." *Gilbert v. Nampa School Dist. No. 131*, 104 Idaho at 145, 657 P.2d at 9.

If the Beckers were enriched by Curtis's construction performance under the Improvement Agreement, the benefit they received can hardly be characterized as unjust when viewed in light of the clean hands doctrine and in relation to Curtis's conduct regarding the controversy in issue. We therefore conclude that Curtis was not entitled to equitable relief in the form of damages on the theory of unjust enrichment.

## B. Attorney Fees at Trial.

On cross-appeal, Curtis asserts that the district court improperly denied his request for an award of attorney fees pursuant to I.C. § 12–120(1). The district court determined that a proper written demand had not been made by Curtis as required by the statute before instituting the action. Inasmuch as we conclude that Curtis was not entitled to recover against the Beckers on the theory of unjust enrichment due to his own conduct, Curtis is no longer the prevailing party, and we do not find it necessary to address this issue further.

## V. CONCLUSION

Because Curtis sought recovery on the theory of unjust enrichment and did not come to the court with clean hands, he was precluded from receiving equitable relief. Therefore, the judgment below in favor of Curtis is reversed.

Costs on appeal are awarded to the appellants, the Beckers. No attorney fees are awarded.

LANSING, Judge, specially concurring.

I concur in the lead opinion. I write separately because, in my view, the result would be the same even without application of the clean hands doctrine upon which the lead opinion relies. I conclude that even if Curtis had been more forthcoming in his dealings with the City of Twin Falls, he would not be entitled to recover because he acted officiously in installing unwanted physical improvements on the Beckers' property and because the benefit to the Beckers was incidental to Curtis's pursuit of his own financial interest.

As the lead opinion notes, the officious intermeddler doctrine precludes recovery for unjust enrichment by one who has officiously thrust a benefit upon another. This doctrine is explained in the RESTATEMENT OF RESTITUTION § 2, cmt. A (1937) as follows:

> Officiousness means interference in the affairs of others not justified by the circumstances under which the interference takes place. Policy ordinarily requires that a person who has conferred a benefit either by way of giving another services or by adding to the value of his land or by paying his debt or even by transferring property to him should not be permitted to require the other to pay therefor, unless the one conferring the benefit had a valid reason for so doing. A person is not required to deal with another unless he so desires and, ordinarily, a person should not be required to become an obligor unless he so desires.

... [W]here a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched. The rule denying restitution to officious persons has the effect of penalizing those who thrust benefits upon others and protecting persons who have had benefits thrust upon them.

Idaho has recognized the officious intermeddler doctrine. *Chinchurreta v. Evergreen Management, Inc.*, 117 Idaho 591, 593, 790 P.2d 372, 374 (Ct.App.1989). In addition, under Idaho law, recovery for unjust enrichment is not available if the benefit to another was created incidentally in the plaintiff's pursuit of his own financial advantage. *Hettinga v. Sybrandy*, 126 Idaho 467, 471, 886 P.2d 772, 776 (1994).

In the present case, Curtis did not obtain the Beckers' consent before beginning work on their land. The trial testimony is in conflict as to when the Beckers first told Curtis that they did not want the improvements on their property, but it is uncontroverted that before the improvements were completed, Curtis knew very well that the Beckers objected to the work. While the construction was in progress, the Beckers' attorney sent a letter to Curtis stating that they did not wish to have the lots developed. Moreover, after the work had begun without their consent, the Beckers barricaded the property to prevent its continuation, but Curtis took down the barricades and resumed his activity.

Curtis installed the improvements over the Beckers' objection so he would be able to comply with City's requirements for the subdivision of his own adjacent property and would be able thereby to realize profits from the sale of his lots. It is inaccurate, however, for Curtis to characterize his position as being "forced" by the City to improve Beckers' lots at their expense and over their protest. If Curtis could not obtain the Beckers' authorization to develop their lots at their expense, he had several choices: he could have sought the Beckers' agreement to let him install the improvements without cost to the Beckers; or he could have negotiated to purchase the lots from them at whatever price the Beckers might require; or he could have gone back to the City to try to negotiate

changes to the Improvement Agreement; or he could have simply abandoned his plan to develop the subdivision. Curtis did none of these but instead forged ahead, forcing upon the Beckers changes to their lots that they did not want and for which they never agreed to pay.

Curtis gives no satisfactory explanation as to why *his* choice as to how *he* wanted to use *his* property should take legal precedence over how the Beckers chose to use theirs. I know of no rule of law that, under the circumstances presented here, allows one party to alter the property of another and impose upon that property owner an uninvited financial burden merely so that the first party can use his own property as he deems most desirable and profitable.

The actions that Curtis took on the Beckers' property were those of an officious intermeddler, and were taken for Curtis's own financial advantage. The benefit received by the Beckers therefore was not "unjust," and Curtis is not entitled to compensation.

PERRY, J., concurs both in the lead opinion and in Judge LANSING's concurring opinion.