**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket Nos. 45764 & 45883**

| | | |
|---|---|---|
| KENWORTH SALES COMPANY, a Utah corporation, doing business in the State of Idaho, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| SKINNER TRUCKING, INC., an Idaho corporation; JAMES E. SKINNER, an individual; and DAVID C. SKINNER, an individual, | ) ) ) ) ) | |
| | ) | **Twin Falls, September 2019 Term** |
| Defendants-Respondents. | ) | |
| --------------------------------------------------------- | ) | **Opinion Filed: December 11, 2019** |
| KENWORTH SALES COMPANY, a Utah corporation, doing business in the State of Idaho, | ) ) ) ) | **Karel A. Lehrman, Clerk** |
| Plaintiff-Respondent, | ) ) | |
| v. | ) ) | |
| SKINNER TRUCKING, INC., an Idaho corporation; JAMES E. SKINNER, an individual; and DAVID C. SKINNER, an individual, | ) ) ) ) ) | |
| Defendants-Appellants. | ) ) ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Randy J. Stoker, District Judge and Jon J. Shindurling, District Judge.

The judgment and order of the district court are affirmed.

Benoit, Alexander, Harwood, High & Mollerup, PLLC, Twin Falls, for appellant. Michael Danielson argued.

Rockstahl Law Office, Chtd., Twin Falls, for respondents. Joseph R. Rockstahl argued.

_____

BRODY, Justice.

This appeal concerns an unjust enrichment claim brought by Kenworth, a commercial truck dealer, against Skinner Trucking, one of its customers. Kenworth claims Skinner was unjustly enriched when Kenworth paid past due lease payments and the residual balance owed on Skinner's lease with GE Transportation Finance. The district court entered judgment for Skinner on the grounds that, as to the residual value of the trucks, Kenworth had not conferred a benefit on Skinner, and that as to both the residual value of the trucks and the past due lease payments, Kenworth was an "officious intermeddler" because it had voluntarily paid GE without request by Skinner and without a valid reason. In a subsequent order, the district court denied Skinner's request for attorney fees under Idaho Code sections 12-120(3) and 12-121. Kenworth timely appealed from the district court's judgment. Skinner timely appealed from the district court's order regarding costs and fees. The parties' appeals have been consolidated.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Kenworth Sales Company ("Kenworth") is a commercial truck dealer. In August of 2011, Kenworth sold three trucks to GE Transportation Finance ("GE"), a financing company, for lease to Skinner Trucking. Kenworth negotiated Skinner's lease with GE on Skinner's behalf, but the lease was signed only by Skinner and GE.

Skinner's lease with GE was known as a "TRAC" lease (terminal rental adjustment clause). In a TRAC lease, the vehicle's post-lease residual value is determined at the beginning of the lease. Once the lease ends, the lessee has three options: re-finance the vehicle based on its residual value, buy the vehicle by paying an amount equal to the vehicle's residual value, or return the vehicle to the lessor to be sold. If the lessee chooses the third option, and the vehicle is sold for less than its residual amount, the lessee will owe the lessor the difference. If the vehicle is sold for more than the residual amount, the lessor will owe the lessee the difference. In this case, the lease provided that the residual value for each truck was $58,051.20 and that the monthly rental payment for each truck was $2,357.72.

Skinner turned in two of the trucks in October of 2015, and the third truck in December of 2015. The trucks were turned in to Kenworth, where Skinner typically turned in its trucks.

(The lease provides that, at the end of the lease, Skinner would turn in the trucks at a location designated by GE.) Ultimately, Kenworth paid GE the total of the trucks' residual values ($174,153.60) as well as back rent that Skinner owed for one of the trucks ($7,073.17). As a result of the payments, Kenworth owned the trucks. Kenworth employees gave similar answers regarding why the decision was made to buy the trucks, stating that Kenworth had no profit motive; it merely hoped to break even. Kenworth employees testified, for example, that the Skinners "were long term customers," that they were "friends" and Kenworth "cared," and "[i]t had been a long relationship."

In January 2016, Kenworth appraised one of the trucks and determined that the trucks were each worth $42,000at the time Skinner turned them in. Two days later, Kenworth invoiced Skinner for $55,226.77: the difference between the three trucks' combined residual value and what Kenworth estimated the trucks were worth ($174,153.60 - $126,000.00), plus the back rent owed on one of the trucks ($7,073.17). Neither party disputes that there is no writing showing an agreement between Skinner and Kenworth that Kenworth would pay Skinner's "obligation" to GE or that Skinner would pay Kenworth back.

About six months later, Kenworth filed a complaint in district court claiming that Skinner was unjustly enriched by Kenworth's payments to GE, and requested a judgment against Skinner in the amount of $55,226.77. After a bench trial, the district court entered judgment in favor of Skinner, denying Kenworth's unjust enrichment claim and dismissing it with prejudice. In its findings of fact, the district court found that Skinner owed approximately $7,000 in back rent and that Kenworth made the payments to GE because "Kenworth was sympathetic to Skinner's position and did not wish to see Skinner get into a worse financial position by having the trucks sold at auction." And that "[t]he most substantial evidence supporting the reason for [Kenworth's decision to make the payments to GE] was that Skinner was a good customer and they wanted to help them." Additionally, the district court found that there was no agreement between Skinner and Kenworth about what would happen if the trucks could not be sold for enough money to repay Kenworth. The court reasoned that while the trial record was not clear about the discussions between Skinner and Kenworth, Skinner had never asked Kenworth to pay off its debt. The most substantial evidence supporting Kenworth's decision to make the payments was that "Skinner was a good customer and they wanted to help them."

As to payment for the trucks' residual lease values, the court concluded that Kenworth

had not satisfied the first element of its unjust enrichment claim–showing that it had conferred a benefit on Skinner–because Kenworth had paid GE an amount equal to the residual value of the trucks. Under the terms of the lease, Skinner would not owe anything to GE unless GE sold the trucks for *less* than their residual value. Therefore, there was no benefit, in the form of debt repayment, for Kenworth to confer on Skinner. As to the payment for back rent, the court concluded that Kenworth had satisfied the first element of its claim (conferring a benefit), but decided it was unnecessary to analyze the remaining elements because Kenworth was an officious intermeddler as to both the residual value payment and back rent payment. The district court explained that under the officious intermeddler doctrine, "if a plaintiff has volunteered to confer a benefit on another person, there can be no unjust enrichment claim." However, a "valid reason to give such a benefit, such as protecting an interest, will prevent the plaintiff from being an officious intermeddler." Kenworth was an officious intermeddler, the court reasoned, because it had "voluntarily purchased the vehicles, voluntarily paid the past due lease amounts, both without request from Skinner." Furthermore, Kenworth had no valid reason to make the payment to GE because there was no testimony indicating that Kenworth had an interest in the trucks or an expectation that Skinner would continue to do business with Kenworth. Kenworth filed a timely appeal.

Following entry of judgment in its favor, Skinner filed a motion for fees and costs and a motion for reconsideration, asking the district court to reconsider its order that each party bear its costs and asking it to award Skinner attorney fees, citing Idaho Rules of Civil Procedure 54 and 68 and Idaho Code sections 12-120(3) and 12-121. The district court denied Skinner's motion to reconsider. It rejected Skinner's request for attorney fees under section 12-120(3), reasoning that there was no commercial transaction between Kenworth and Skinner because there was no contract or agreement between them, and Kenworth paid GE of its own volition. It denied Skinner's request for attorney fees under section 12-121 because Kenworth had presented evidence supporting its allegation that such an agreement did exist. So Kenworth had a good faith basis to proceed with its claim, even though it ultimately lost. On March 14, 2018, the district court entered a corrected order, which added a discussion of attorney fees under Rule 68 and costs under Rule 54(d)(1). Though Skinner initially raised the issue of costs as one of the issues on appeal before this Court, the parties later stipulated to the amount of Skinner's costs. Therefore, the issue of costs is now moot.

4

## II. STANDARD OF REVIEW

Following a bench trial, this Court will not set aside a trial court's findings of fact unless they are clearly erroneous. *Turcott v. Estate of Bates*, 165 Idaho 183, 443 P.3d 197, 202 (2019); I.R.C.P. 52(a)(7). "In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did," but instead "inquires whether the findings of fact are supported by substantial and competent evidence." *Id*. "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Id.* "Findings of fact that are supported by substantial and competent evidence are not clearly erroneous—even in the face of conflicting evidence in the record." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). "However, this Court exercises free review over the district judge's conclusions of law." *Turcott*, 165 Idaho at 183, 443 P.3d at 202.

"[W]hen reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). "An award of attorney fees and costs is within the discretion of the trial court and subject to an abuse of discretion standard of review." *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 669, 676, 434 P.3d 1275, 1282 (2019), *as amended* (Apr. 22, 2019). This Court uses a four-part test to review an alleged abuse of discretion by the district court:

> Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. "However, when an award of attorney fees depends on the interpretation of a statute, the standard of review for statutory interpretation applies." *Med. Recovery Servs.*, *LLC v. Lopez*, 163 Idaho 281, 283, 411 P.3d 1182, 1183 (2018). "The interpretation of a statute is a question of law over which this Court exercises free review." *Id.*

## III. ANALYSIS

### A. The officious intermeddler rule is not an affirmative defense.

The district court found that Kenworth's unjust enrichment claim failed because the company was an "officious intermeddler." Kenworth argues that the officious intermeddler rule

5

is an affirmative defense, and because Skinner never pled or argued it until post-trial briefing, the district court should not have considered it. We hold that the officious intermeddler rule is not an affirmative defense.

Rule 8(c) of the Idaho Rules of Civil Procedure provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense. . . ." Black's Law Dictionary defines an "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Affirmative Defense*, Black's Law Dictionary (11th ed. 2019).The purpose of the rule is to alert the parties to the issues of fact which will be tried and to afford them an opportunity to present evidence to meet those defenses. *Williams v. Paxton*, 98 Idaho 155, 164, 559 P.2d 1123, 1132 (1976). The rule lists nineteen affirmative defenses. I.R.C.P. 8(c)(1). The officious intermeddler rule is not on the list. *See id.*

We have made it clear that Rule 8(c)'s list is not intended to be exhaustive. *See Garren v. Butigan*, 95 Idaho 355, 358, 509 P.2d 340, 343 (1973) (stating that Rule 8(c)'s listing of affirmative defenses "is not intended to be exhaustive or exclusive."). In fact, this Court has recognized a host of affirmative defenses that are not listed in the rule. *See, e.g.*, *Fuhriman v. State of Idaho, Dep't of Transp.*, 143 Idaho 800, 803, 153 P.3d 480, 483 (2007) (citing Black's Law Dictionary's definition of "affirmative defense" and holding that immunity through qualification as a statutory employer is an affirmative defense because even if all of the plaintiff's allegations were true, it would defeat the plaintiff's claim); *Seamans v. Maaco Auto Painting & Bodyworks*, 128 Idaho 747, 752, 918 P.2d 1192, 1197 (1996) (holding that in a worker's compensation case, an employee's willful intention to injure himself is an affirmative defense, in part because "[i]t seems unreasonable to believe that the legislature intended to shift to claimants the burden of proving a negative, that is, of disproving an intention to injure oneself"); *Keller Lorenz Co. v. Ins. Assocs. Corp.*, 98 Idaho 678, 681, 570 P.2d 1366, 1369 (1977) (holding that, in that case, the defense of an agent's immunity from personal liability on contracts entered into as an agent was an affirmative defense because it "depends upon proof of matters unrelated to the allegations in the complaint, matters which the plaintiff may not anticipate or be prepared to litigate without warning"); *Williams*, 98 Idaho at 164 n.1, 559 P.2d at 1132 n.1 (1976) (declining to hold that the issue of the constitutionality of a statute was waived because the constitutionality of a statute is "not ordinarily an issue upon which evidence must be

presented at trial" or "about which [the plaintiff] must be forewarned in order to prepare evidence for trial"); *Bryan & Co. v. Kieckbusch*, 94 Idaho 116, 119, 482 P.2d 91, 94 (1971) (holding that impossibility of performance was an affirmative defense because it "raised new matter not alluded to in the complaint").

To determine whether the officious intermeddler rule constitutes an affirmative defense, we have to begin with the doctrine of unjust enrichment. We have long held that a prima facie case for unjust enrichment exists where: "(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be *inequitable* for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*, 157 Idaho 395, 398, 336 P.3d 802, 805 (2014) (citations omitted) (emphasis added). It is well understood that "[u]njust enrichment will not apply in the instance of an officious intermeddler." *Teton Peaks Inv. Co., LLC v. Ohme*, 146 Idaho 394, 398, 195 P.3d 1207, 1211 (2008). "The officious intermeddler rule essentially provides that a mere volunteer who, without request therefor, [sic] confers a benefit upon another is not entitled to restitution. This rule exists to protect persons who have had unsolicited 'benefits' thrust upon them." *Id.*

Kenworth acknowledges that Idaho courts have not explicitly held that the officious intermeddler rule constitutes an affirmative defense, but argues that they have treated it as such, citing to our decision in *Teton Peaks* and the Court of Appeals' decisions in *Curtis v. Becker*, 130 Idaho 378, 382, 941 P.2d 350, 354 (Ct. App. 1997) and *Chinchurreta v. Evergreen Management, Inc.*, 117 Idaho 591, 790 P.2d 372 (Ct. App. 1989). Kenworth argues that the discussion of the officious intermeddler rule in these cases occurs separately from the list of elements that a plaintiff must satisfy in order to prevail on an unjust enrichment claim. Therefore, the rule must be a separate affirmative defense. We disagree.

The officious intermeddler rule will defeat a plaintiff's claim, but this is true not because the rule is an affirmative defense, but rather because the voluntary nature of the payment bears directly on whether it would be inequitable for the defendant to retain the benefit of the payment. Stated differently, Kenworth had the burden of proving at trial circumstances which would make it inequitable for Skinner to benefit from Kenworth's payments to GE. This would require more than evidence of a voluntary payment. *See, e.g.*, *Chinchurreta*, 117 Idaho at 593 ("It is well settled that a person cannot—by way of set-off, counterclaim or direct action—recover money

7

which he or she 'has voluntarily paid with full knowledge of all the facts, and without any fraud, duress or extortion, although no obligation to make such payment existed'") (quoting *McEnroe v. Morgan*, 106 Idaho 326, 335, 678 P.2d 595, 604 (Ct.App. 1984)). A defendant who receives the benefit of a voluntary payment may be enriched, but he is not *unjustly* enriched. *See* Restatement (First) of Restitution § 2, cmt. a (1937). While Skinner did not invoke the officious intermeddler doctrine until its post-trial briefing, Kenworth understood that proving the equitable circumstances under which the purchase of the trucks was made was essential to its prima facie case. Kenworth's cry of trial by ambush is unjustified.

**B. The district court did not err when it concluded that Kenworth was an officious intermeddler.**

Kenworth asserts that even if this Court holds that the officious intermeddler rule is not an affirmative defense, the district court erred in applying it to the facts of this case. Kenworth argues that the district court incorrectly found that Kenworth had no valid reason for purchasing the trucks from GE because it ignored the reason that Kenworth gave: to keep Skinner, "a long-time customer," in business. Kenworth also disputes the district court's statement that there was "no indication that Skinner would continue to do business with [Kenworth]." Given the basis for the doctrine, we agree with the district court that merely keeping Skinner in business was not the kind of interest sufficient to avoid application of the officious intermeddler rule.

The term "officious intermeddler" first appeared in Idaho case law in the Court of Appeals' decision in *Chinchurreta v. Evergreen Management, Inc.*, 117 Idaho 591, 790 P.2d 372 (Ct. App. 1989). Explaining the basis for the rule, the Court of Appeals cited section 2 of the First Restatement of Restitution which states that:

> A person who officiously confers a benefit upon another is not entitled to restitution therefor.

Restatement (First) of Restitution § 2 (1937). Comment "a" to this provision describes "officiousness" as unjustified interference in the affairs of others and explains that there must be a "valid reason" for conferring a benefit in order to prevail on a claim for unjust enrichment:

> *Officiousness means interference in the affairs of others not justified by the circumstances under which the interference takes place.* Policy ordinarily requires that a person who has conferred a benefit either by way of giving another services or by adding to the value of his land or by paying his debt or even by transferring property to him should not be permitted to require the other to pay therefor, unless the one conferring the benefit had a *valid reason* for so doing. A person is not

8

required to deal with another unless he so desires and, ordinarily, a person should not be required to become an obligor unless he so desires.

The principle stated in this Section is not a limitation of the general principle stated in § 1; where a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched. The rule denying restitution to officious persons has the effect of penalizing those who thrust benefits upon others and protecting persons who have had benefits thrust upon them (see § 112).

Restatement (First) of Restitution § 2 (1937) (emphasis added). "Valid reasons" are found in comment "a" to section 112 and include mistake, fraud, coercion (caused by duress or the necessity of protecting the interest of the person who conferred the benefit), and an agreement with the person receiving the benefit. Restatement (First) of Restitution § 112, cmt. a (1937).

Compared to the types of interests listed in section 112, Kenworth's interest in the payment of Skinner's obligation to GE is too attenuated to constitute a "valid reason" to hold Kenworth liable for restitution: Kenworth was not protecting an interest in its own property, and it was not liable in any way to GE. Although Kenworth could be said to have been protecting its interest in future profits by ensuring that Skinner Trucking survived to continue as a Kenworth customer, but recovery for an incidental benefit to another party in pursuit of one's own financial advantage is specifically disallowed under Idaho precedent. *See Hettinga v. Sybrandy*, 126 Idaho 467, 471, 886 P.2d 772, 776 (1994)). Regardless, there was no evidence in the record suggesting that Skinner was a key client whose business was essential to Kenworth's economic viability. Moreover, several Kenworth employees specifically disclaimed any profit motive and there is substantial evidence to support the district court's determination that there was no evidence that Kenworth expected Skinner to continue doing business with them. Therefore, Kenworth's desire to keep Skinner in business was not an interest sufficient to relieve Kenworth of officious intermeddler status.

### C. Costs and attorney fees.

#### 1. The district court did not err in determining that Skinner was not entitled to attorney fees under Idaho Code section 12-120(3).

Skinner argues that the district court improperly denied it fees under Idaho Code section 12-120(3). Idaho Code section 12-120(3) provides:

In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services *and in any commercial transaction* unless

otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs. The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes.

I.C. § 12-120(3) (emphasis added).

The district court found that there was no commercial transaction between Skinner and Kenworth. Therefore, there was no basis to award attorney fees under section 12-120(3). On appeal, Skinner argues that although there was no contract, there was a commercial transaction because "Kenworth was responsible for structuring the commercial transactions involved by selling the trucks to GE, who then leased them to Skinner," and "Kenworth also admitted at trial that it acted as GE's representatives in the lease." Skinner also argues that "[t]he combined order/lease document was not only commercial in nature but also the gravamen of Kenworth's unjust enrichment claims," and Kenworth's lawsuit would not have arisen but for the existence of the lease. We disagree.

First, Kenworth's sale of the trucks to GE was undoubtedly a commercial transaction, but it was not the gravamen of Kenworth's claim. Rather, Kenworth's claim arose from the payments it made to GE four years later, allegedly to help Skinner. Because Kenworth's sale of the trucks to GE was not the gravamen of its claim, the sale cannot support a claim for attorney fees under section 12-120(3). *See Simono v. House*, 160 Idaho 788, 792, 379 P.3d 1058, 1062 (2016).

Likewise, the lease does not provide a basis for Skinner to recover attorney fees under section 12-120(3) because the lease was between Skinner and GE, not Skinner and Kenworth. *See DAFCO LLC v. Stewart Title Guar. Co.*, 156 Idaho 749, 758, 331 P.3d 491, 500 (2014). Therefore, even though the lease was arguably integral to Kenworth's claim–for example, Kenworth referenced the lease's penalty clauses to argue that its purchase of the trucks spared Skinner the penalties that could have been imposed by GE, and Kenworth used the lease's terms regarding monthly rental payments and residual values to determine the amount by which Skinner was unjustly enriched–Skinner cannot recover attorney fees under section 12-120(3) based on the lease. Skinner argues that Kenworth admitted at trial that it acted as GE's representative in the lease, but that argument is not supported by the record. Skinner points to a portion of the trial transcript in which a Kenworth employee, answering a question about the phrase "financing agreement" in the document showing GE's loan to Kenworth, stated:

> As our flooring source, what that verbiage really means is that they don't have a representative from GE fly into Boise and look at these trucks to confirm that yeah, they are what we say they are. We have an agreement with them that they trust us to say yeah, we've looked at the trucks, they are what we say they are. That's what that means.

The most that this statement shows is that GE lent Kenworth the money to buy the trucks it had leased to Skinner without independently confirming the identity of those trucks. It is not an admission that Kenworth acted as GE's representative in the context of the GE-Skinner lease.

Finally, Kenworth did not allege that it was entitled to recover based on a commercial transaction between itself and Skinner. For there to be a transaction, there must be some kind of agreement, deal, or exchange. *See Transaction*, Black's Law Dictionary (11th ed. 2019) (defining "transaction" as "[s]omething performed or carried out; a business agreement or exchange"). Here, Kenworth consistently argued that it told Skinner that it would pay GE in order to help Skinner and that Skinner understood that this was Kenworth's intention, but Kenworth stopped short of explicitly arguing that Skinner *agreed* to Kenworth's plan. Rather, according to Kenworth, Skinner simply understood Kenworth's plan and did not stop Kenworth from executing it. Therefore, even though Skinner and Kenworth were in a commercial relationship, it cannot be said that Kenworth alleged a commercial *transaction* as the basis of its claim. *See SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, 800, 435 P.3d 1106, 1120 (2019) ("Here, even though the parties had a commercial relationship, they never consummated a commercial transaction for purposes of Idaho Code section 12-120(3)."). Because Kenworth did not allege that there was a commercial transaction between itself and Skinner, the district court correctly concluded that Skinner is not entitled to attorney fees under section 12-120(3) even though Kenworth's claim likely would not have arisen in the absence of the lease.

## 2. The district court did not err by denying Skinner attorney fees under Idaho Code section 12-121.

Skinner claims that the district court also erred by denying its claim for attorney fees under Idaho Code section 12-121, arguing that Kenworth's claim was frivolous. Idaho Code section 12-121 provides, "In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. There was nothing frivolous about Kenworth's appeal. It raised important and fairly debatable issues of law. Therefore, we uphold the district court's determination that Skinner is not entitled to attorney

fees under section 12-121.

**3. Neither party is entitled to costs or attorney fees on appeal.**

Both Skinner and Kenworth claim costs on appeal pursuant to Idaho Appellate Rule 40 and attorney fees on appeal pursuant to Idaho Appellate Rule 40 and Idaho Code section 12-121. Because Skinner and Kenworth have each prevailed only in part, neither is entitled to costs on appeal. See *Valiant Idaho, LLC v. JV L.L.C.*, 164 Idaho 280, 294, 429 P.3d 168, 182 (2018) ("No costs will be awarded on appeal since each party prevailed in part."). For the same reason, neither party is entitled to attorney fees on appeal. *See Syringa Networks, LLC v. Idaho Dep't of Admin.*, 159 Idaho 813, 367 P.3d 208, 228 (2016) ("For a party to recover fees under any of these provisions [including Idaho Code section 12-121], it must be the prevailing party. Where adverse parties have each prevailed in part on appeal, neither is the prevailing party.") Therefore, we decline to award costs or attorney fees on appeal to either party.

## IV. CONCLUSION

We affirm the district court's judgment in favor of Skinner and its order denying Skinner's motion to reconsider regarding attorney fees. Neither party is awarded costs or attorney fees on appeal.


Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.